Walker v. Dunham.

WALKER, Respondent, v. DUNHAM et al., Appellants.

St. Louis Court of Appeals.    Submitted January 6;    Opinion Filed
January 26, 1909.

1. NEGOTIABLE INSTRUMENTS: Indorser: Maker: Negotiable Instrument Act.    The rule formerly prevailing in this State that a person, not a payee in a bill or note, writing his name upon the back of it was prima facie maker, has been abrogated by the Negotiable Instrument Act of 1905; and section 63 of that Act makes such person an indorser unless he clearly indicates by appropriate words his intention to be bound in some other capacity.    The effect of the Negotiable Instrument Act, as declared in its title, was to revise and make uniform with other states the law of this State on the subject of negotiable instruments.

2. ————: ————: ————: ————: Renewal Note.    A note executed before the passage of the Negotiable Instrument Act of 1905, signed on the back by parties who under the law as it then existed became makers, was renewed after the passage of said act and the same parties with others signing the new note in blank on the back.    Held, the effect of the renewal was to extinguish the old note and the liability of such signers is determined by the Negotiable Instrument Act so that they were prima-facie indorsers only.

3. APPELLATE PRACTICE: Constitutional Question.    A constitutional question can not be raised for the first time on appeal to the appellate court.

Appeal from Phelps Circuit Court.—*Hon. L..B. Woodside,* Judge.

REVERSED AND REMANDED.

*J. J. Crites, Lorts & Breuer* and *Watson & Holmes* for appellants.

Appellants were merely endorsers of the note sued upon, and as such were entitled to notice of the presentment, demand, non-payment and protest of the note before they could be held liable thereon. Sessions Acts 1905, sec. 23, p. 251; Bunker Neg. Inst. Law, sec. 65; Crawford's Ann. Neg. Inst., sec. 64; Cora v. Levy, 89 N. Y. 658; Downey v. O'Keefe et al. (R. I.), 59 Atl. 929.

*C. D. Jamison* and *J. Ellis Walker* for respondent.

On the contention that all the parties who placed their names on the note, were prima facie, joint makers, the respondent cites the following authorities: Powell v. Thomas, 7 Mo. 440; Schneider v. Schiffman, 20 Mo. 571; Semple v. Turner, 65 Mo. 696; Barnett v. Nolte, 55 Mo. App. 184; Rossi v. Schwacker, 66 Mo. App. 67; Session Acts 1905, sec. 63; Good v. Martin, 95 U. S. 90. On the contention that the note sued on, being a renewal note of one given prior to the enactment of the statute cited, does not fall within the act, respondent cites the following authorities: Section 195 of said act; Daniels on Neg. Insts. (5 Ed.), sec. 1266a; Bunker on Neg. Insts., p. 173, note 1. On the contention that all the parties to the note, save Salts and Cooper, signed for a valuable consideration, respondent cites the following authorities: Acts 1905, sec. 25, of the (Negotiable Insts.) ; Sutherland v. Mead, 80 App. Div. 103, 80 N. Y. Supp. 504, 1149. On the contention that under the title of the bill cited, the General Assembly could not abrogate a rule of law then established, respondent cites the following authorities: State ex rel. v. Baker, 129 Mo. 486; State v. Miller, 45 Mo. 495; State v. Coffee and Tea Co., 171 Mo. 634; 1 Bl., Comm. 86 to 92; 1 Swift's Dig., pp. 11-13; Potter's Dwarris on Stat., pp. 47-67; Const., Art. 4, sec. 28 of the Const. of Mo.

On the contention that the General Assembly did not intend to do more than to declare the law as it then stood, respondent cites the following authorities: Section 63, Sess. Acts 1905, entitled Neg. Insts.; (Sec. 65 of the Mich. Act); State ex rel. v. Wardell, 153 Mo. 319; State ex rel. v. Mason, 153 Mo. 49; Bank v. Douglas Co., 146 Mo. 42.

STATEMENT.—On the twenty-fifth of February, 1906, respondent instituted suit against appellants, in the circuit court of Phelps county, Missouri, on the following note:

"Rolla, Missouri, July 13, 1906.

"One year after date for value received, I promise to pay to the order of J. Ellis Walker, one hundred and ten dollars, at the National Bank of Rolla, with interest from maturity at the rate of eight per cent per annum.

"ALONZO DUNUHAM."

On the back of this note appeared the signatures of John W. Cooper, J. A. Watson, Wm. J. Salts, A. B. Bale, David E. Cowan, O. P. Margedant, the appellants here. The defendant Dunham filed no answer but the other appellants filed an answer, which, after admitting that they had signed the note sued on and denying all other allegations in the petition, continues:

"Further answering, these defendants say that at the time they placed their names on said note, to which they were strangers it was understood and agreed between themselves, the maker and payee of said note, that they, these defendants, signed said note as securities for Alonzo Dunham, the maker thereof, and that they were only undertaking and were only to be held to the responsibility of endorsers thereon. That no demand of payment of said note was made according to law, nor were they notified of the presentment and non-payment of said note, and that by the failure of

the plaintiff to give to these defendants notice of the presentment, demand and non-payment of said note they have been discharged from all liability thereon.

"For another and further answer and defense these defendants say that they 'placed their names upon said note otherwise than as maker, drawer or acceptor,' and that at the time they placed their names thereon they did not 'indicate in appropriate words' *in writing* to be bound otherwise than as endorsers, by reason whereof these defendants say that by virtue of section 63, of an act entitled 'An Act Relating to Negotiable Instruments,' passed by the General Assembly of Missouri, and approved April 10, 1905, they 'are conclusively presumed to be endorsers' on said note, and that by the failure of the plaintiff to notify them according to law of the presentment, demand and non-payment of said note they have been discharged from all liability thereon.

"Wherefore, these defendants, having fully answered, ask to be discharged with their costs."

To this answer a reply was filed which, after denying all allegations of new matter in the answer, continues:

"Plaintiff alleges that defendants Dunham, Watson, Hale, Cowan and Margedant received the consideration for the signatures to said note in their release from a note for the sum of $110, due plaintiff by them at the date of the note herein sued on, and of which note this note is a renewal.

"Plaintiff states that all of defendants were makers of the note in this cause filed for suit and were so taken and accepted by plaintiff."

At the trial of the case, which was before the court without a jury, it appeared that this note was given in renewal of one of date July 13, 1903, for the same amount. The old note contained the signatures of all of the appellants on the back of it except the appellants Salts and Cooper. These had not signed the original

note but were on the new note. The testimony of the respondent, who was the only witness examined in the case, was to the effect that one Dunham, the maker of the original note, came to respondent along in July, 1903, and asked him if he had money to loan, and respondent told him that he did. "There was not anything said about makers or endorsers or security," and Dunham brought respondent the note in July, 1903, with his name on the face of it, and the names of the other appellants, except Salts and Cooper, on the back of it. Sometime after this first note fell due and along about the thirteenth of July, 1906, Dunham came to respondent and handed him this present note. Respondent testifies that nothing was said in regard to it, it was simply renewed and brought to him, he gave the old note to Mr. Dunham when the new one was given, and it passed out of his (respondent's) hands and control; "gave it to Mr. Dunham." On cross-examination he stated that when the first note came due he notified Dunham of it and asked who he should notify, and afterwards Dunham came to him with this new note with the same names on it that were on the first one, with the addition of the names of Messrs. Cooper and Salts; respondent had never said a word to any of the parties other than Dunham, about the note being past due and not being paid; had not told Dunham when he let him have the money, that he would loan the money if he would go out and get some man to endorse his note; did not know or think that he was loaning the money to Dunham alone, as maker, on the reliance of the other defendants (appellants here) as endorsers; considered every one of them makers on that note; and, said witness on further cross-examination and in answer to the question by Mr. Watson, one of the respondents, who was also an attorney in the case, if he did not know that he had loaned the money to Dunham "on the fact that the appellants had endorsed his note?" "No, sir, I didn't know. I considered every one of you makers

on that note and that is the reason I let the money go"; that he had loaned the money because the names of appellants were on the note; admitted that he would not have let Dunham have the money on his own name; that the note had to be a good note; did not know then and does not know now that appellants were not getting the money. When this present note became due, Mr. Dunham was in St. James and respondent notified him some time in June that it would be due and he said that he had sent word to Mr. Morgedant and everything would be fixed up; had not notified the appellants until several months after the note became due that it was due and unpaid.

This was substantially all the testimony in the case. At the conclusion of the evidence the appellants asked the court for the following declarations of law:

"Under the provisions of section 63, page 251, Acts of 1905, a person who places his signature upon the back of a note is deemed to be an endorser unless he clearly indicates his intentions to be bound in some other capacity, and is not liable upon the note unless the same is duly presented, demand of payment made thereon of the maker, protested for non-payment, and notice thereof given, and in this case it appearing that the defendants only signed the note by placing their names on the back thereof, and gave no indication of being bound otherwise than endorsers, and no demand, protest or notice of non-payment being shown, the finding should be for the defendants."

The court refused this declaration and appellants duly excepted. Thereupon the court of its own motion gave the following declaration of law:

"Prior to the passage of the act of 1905, regarding negotiable instruments, a person who wrote his name on the back of a note before delivery, of which he was neither the payee or indorsee, was held *prima facie* to be a maker, and not an endorser.

"The mere signing the note on the back imports that he was a maker. He could show, by extrinsic evidence that he was an endorser only but the signature itself made him a maker.

"Section 63, page 251, Acts 1905, provides that, 'A person placing his signature on an instrument other than as maker is deemed to be an endorser unless he clearly indicates by appropriate words his intention to be bound in some other capacity.'

"There is no significance given by this section as to where he signs it. If the Legislature had intended by this section to make a person who signed on the back of a note an endorser it could have done so with fewer words than were used and in unmistakable terms.

"While it is true that the courts usually adopt the construction of a law that has been given it by the courts of a state from which it is adopted this rule should be subject to the limitations of our own laws existing at the time of the passage of the act.

"At the time of the passage of this act a person who signed his name on the back of a note, as these defendants have signed, was a maker. The meaning of the term 'maker' as used in section 63, should be construed by our laws existing at the time.

"Repeals or change of laws by implication are not favored, and it is a settled rule that the prior law is to be upheld if the two acts can subsist together. To supplant an existing law a subsequent statute must be clearly repugnant thereto.

As section 63 does not change the law then existing as to who are makers of notes, and as these defendants would be makers under the law existing at the time of the enactment of said section they are still makers and no protest or notice of non-payment was necessary to make them liable on the note."

Exception was duly saved to this declaration, and the issues being submitted to the court, it found against all the defendants and awarded judgment against them

for the principal and interest on the note. Motion for new trial was duly filed, overruled and exceptions saved, the motion for the new trial being based on the refusal of the court to give the instruction asked by the appellants and to its action in giving the instruction which it gave of its own motion, and because the court erred in finding the issues for the plaintiff. All of the defendants except Dunham have appealed.

REYNOLDS, P. J. (after stating the facts) — As will be seen by the foregoing statement, the two questions for determination in this case are, first, whether Section 63, of the Act of the General Assembly of this State, approved April 10, 1905, known as "The Negotiable Instruments Act," abrogates the rule theretofore announced by our courts, that persons not payees in the bill, endorsing their names on the back of it, were *prima facie* joint makers, and second, whether, if The Negotiable Instruments Act does change the law, as theretofore declared by our courts in this respect, the provisions of this new act apply to this note, made July 13, 1906, in renewal of a note for the same amount made July, 1903. It is to be observed that prior to the passage of The Negotiable Instruments Act of 1905, we had no statutory law on the subject, our law governing it resting upon the decisions of our courts under their construction of the "Law Merchant."

Our Negotiable Instruments Act of April 10, 1905, is entitled, "An act relating to negotiable instruments, to revise and codify the law concerning the same and to establish the law uniform with that of other States on the subject." Section 195 of the act declares that its provisions do not apply to negotiable instruments made and delivered prior to the passage thereof. Section 196 declares that any case not provided for in the act shall be governed by the rules of the Law Merchant, and section 197 repeals all acts and parts of acts inconsistent with the act.

In 1842 the question as to whether a person not the endorsee or payee, but writing his name on the back of the note in blank, is to be held as maker and may be sued as an original promissor, whether the note is negotiable like an inland bill of exchange or not, came before our Supreme Court and was determined in the case of Powell et al. v. Thomas, 7 Mo. 440. Judge Scott who delivered the opinion, states that it is a case of first impression in that court and that it must be admitted it is not without its difficulties. But following Moris v. Bird, 11 Mass. 440, and Baker and Briggs, 8 Pickering, as well as the New York courts, our Supreme Court held, in this Powell case, that the person so endorsing a promissory note in blank is a joint maker. This has been followed by our Supreme and Appellate Courts without question from that time on. The latest decision that has come to our attention, made prior to the enactment of the law of 1905, being that of First National Bank of Kansas City v. Guardian Trust Co., reported in 187 Mo. 494, decided by the court *in banc* and which, at p. 519, cites Powell et al. v. Thomas, supra, and the cases following that in support of the rule.

As was true in the Powell case as to the question then before our Supreme Court being one of first impression in that court, so also is this question in this case, now before us, under the Negotiable Instrument Act, so far as we are aware, one of first impression before any of our appellate courts.

It is a matter of common knowledge to the profession that there was no uniformity of decision on this proposition among the courts of the several States, some following one rule, others another. As we have seen, our Missouri courts followed those of New York and Massachusetts in adopting the old rule. Both of these states, along with more than thirty other states of the Union, have adopted this Negotiable Instruments Law, all substantially in the same language as contained in

the one adopted by our State. In point of fact it is a matter of common knowledge, that this law is the result of the labors of the members of the American Bar Association to produce uniformity between the laws of the different States concerning negotiable instruments, and members of that association have taken up the matter before their respective State Legislatures and secured the adoption of this law by those States. This section of the law has been before the appellate courts of New York and Massachusetts, the decisions of whose courts, as we have seen, were accepted in 1842 by our Supreme Court in fixing the rule of our State, and it has also been before the appellate courts of several other States, in which states the rule adopted in Missouri had prevailed, and in all of them it is recognized that the one prominent motive which led to the enactment of this law was the desire to establish a uniform law on the subject of negotiable instruments throughout the United States. Wherever these acts have received judicial interpretation, this purpose has been recognized, in fact, that purpose is set forth in the very title of the act itself. It is stated to be "to establish and codify the law concerning negotiable instruments and to establish a law uniform with that of other States on the subject." In all the courts of the States before which this law has come under consideration, it has been held that the law, and especially what are sections 63 and 64 of our law, has changed the rule of decision theretofore in force in those States. The latest case that has come to our attention on the subject is that of Rockfield et al. v. First National Bank, 77 Ohio St. 311, decided December 17, 1907. This was a case in the Supreme Court of Ohio on error to the circuit court of Clark county. The decision of the circuit court of Clark county, reported 28 Ohio Circuit Court Reports, p. 720, is correctly cited by the industrious counsel for respondents as holding that the Negotiable Instruments Act does not change the former rule as to the liability of

parties signing on the paper who were neither makers nor payees thereon. The learned counsel, however, were doubtless not aware of the fact that the decision of the circuit court in this very case was reversed by the Supreme Court of Ohio, in the 77th Ohio State, *supra,* and the sections here under consideration, namely, sections 63 and 64, were held by that court to have abrogated the rule therefore in force in that State. All the questions concerning the effect of this new law on the old rule are so fully discussed and the authorities so thoroughly collated in this Ohio case, that we consider it unnecessary to go into an elaborate discussion of the subject, it being sufficient to say that the view taken by the Supreme Court of Ohio, of this particular provision, in holding that it abrogates the rule formerly in force seems to us the correct view. Decisions to the same effect have been rendered by the courts of other states, which before the act had held to the rule prevailing in this State, and these sections 63 and 64 or similar ones, have been held to revoke the rule formerly prevailing in their States by the Supreme Court of Rhode Island, in Downey v. O'Keefe, 26 R. I. 571; by Massachusetts, in Thorpe v. White, 188 Mass. 333, and Bank v. Law, 127 Mass. 72, and Toole v. Crafts, 193 Mass. 110; by North Dakota, in Farquhar Co. v. Higham, 16 N. Dakota 106; by New Jersey in Gibbs v. Guaraglia, 67 Atl. 81, and Wilson v. Hendee, 66 Atl. 413; by Florida, in Baumeister v. Kuntz, 42 So. 886; by New York in Far Rockaway Bank v. Norton, 186 N. Y. 484; by Iowa, in Vander Ploeg v. Van Zuuk, 135 Iowa 359.

In Far Rockaway Bank v. Norton, supra, decided December 21, 1906, the Court of Appeals of New York, at p. 485, says: "The note was given in renewal and to take up an earlier note also indorsed by the defendant. To establish the fact that the defendant had endorsed the note with the purpose of giving the maker credit with the payee, proof was given tending to show

that default having been made in the payment of the earlier note notice of protest thereof was given to the defendant. It is urged that the evidence as to the protest of the earlier note was not of a proper character. It is unnecessary to consider this question, for since the enactment of the Negotiable Instrument Law (Laws 1897, ch. 612) the law obtaining in the case of such endorsements as that made by the defendant has been radically changed. Prior to that time the endorser was presumed to be a second endorser and not liable to the payee, though it was competent for the payee to prove *aliunde* that the intention of the endorser was to give the maker credit with the payee. [Bacon v. Burnham, 37 N. Y. 614, Coulter v. Richmond, 59 N. Y. 478.] Section 114 of the Negotiable Instruments Law prescribes a different rule. It is enacted that 'Where a person, not otherwise a party to an instrument, places thereon his signature in blank before delivery, he is liable as endorser in accordance with the following rules:

" '1. If the instrument is payable to the order of a third person, he is liable to the payee and to all subsequent parties.'

"This note was made in December, 1898, and, therefore, the proof offered by the plaintiff was not necessary to maintain its cause of action, and the error, if error there was, ·was immaterial." This section 114 of the New York law is identical, in substance, with section 64, of our Negotiable Instruments Law, and section 113 of the New York law is the same as our section 63. Following the construction placed on the effect of these sections, as changing the old rule, by the courts of New York and Massachusetts from which we obtained our old rule, and the courts of the other States named in which that rule also prevailed, we hold sections 63 and 64 of our Negotiable Instruments Law abrogate the rule heretofore in force in our State as to the liability of parties on negotiable instruments. The law of

1905 was in force at the time the note in controversy was executed and, governed by the provisions of that law, and appellants here, except the maker of the note, Alonzo Dunham, are liable on the note as endorsers and not as joint makers. We are led to this view of the case not only by the weight of authority and the plain reading of our own law but by the further consideration that the change in the law made by the Negotiable Instruments Act, in this respect, is eminently a wise one. We agree with the statement made by a commentator on this law (Crawford's Annotated Negotiable Instruments Law (3 Ed.) where he says in a note to his section 114, at top p. 84, that "When a plain man puts his signature on the back of a negotiable instrument he ordinarily understands that he is becoming liable as an endorser; and if he puts it there before the instrument is delivered, he usually does so for the purpose of giving the maker or drawer credit with the payee or other person to whom it is negotiated."

We are further led to hold these sections as abrogating the former rule for the reason that to do otherwise would be to separate our State from all the great commercial States in the Union on this matter of commercial law, a matter of vast importance to all our people. To hold that these sections, particularly section 63, does not govern in our State because, before its enactment, our courts had held otherwise, would be to perpetuate that very confusion and dissimilarity between our law-merchant and that of the other great commercial States, to obviate which is stated in the title of the act itself is one of the objects of its enactment. Missouri is too important a State, in her great commercial, industrial and mercantile interests, to be fenced off from the other great States of our Union by a construction that would leave her people vexed with the very trouble her lawmakers were endeavoring, and as we think successfully, to end.

It appears in the opinion of Chief Justice CULLEN, in Far Rockaway Bank v. Norton, *supra,* that the note in suit was given in renewal and to take up an earlier note, also endorsed by the defendant, but that the note in suit was made after the enactment of the Negotiable Instruments Law, and the Court of Appeals of New York held in that case, that the Negotiable Instruments Law, having been adopted prior to the making of the renewal note, controlled it. This is a recognition of the general common law rule, that the payment of a debt by a note extinguishes the debt. [Byles on Bills (Sharswood's 7th Ed.), pp. 240, 390.] To the same effect also, see 2 Daniel's Negotiable Instruments (5 Ed.), sections 1266 and 1267, in which latter work, however, the rule as to payment of one note by another is correctly said to rest chiefly in the intention of the parties to the transaction. In the case at bar the old note, according to the undisputed testimony, was given up by the holder to the maker when the new note was executed and delivered. That extinguished the old note. While there is conflict in the cases as to the effect of renewals, all hold, so far as we are aware, that if the intent is to extinguish the one by the other, then the renewed note is treated as a new transaction on a new promise. Furthermore, in the note under consideration, two new endorsers, in addition to those who had been on the first one appeared and it was in law a new contract with different parties.

In the brief filed in this case, the argument is made that if section 63 of the Negotiable Intruments Act is held to apply to the note in suit, then, as the first note was given prior to the enactment of the Negotiable Instruments Law of 1905, to change the rights of the parties to that note by this new law is an impairment of the obligations of the contract and unconstitutional. If that question had been properly raised on the record in this case, we would have no jurisdiction over this case; but such a question cannot be injected into the

record by brief and for the first time before this court. Furthermore, holding that the old debt was extinguished by the new one disposes of that proposition as made in the brief, and in the instruction. The declaration of law asked by appellants was substantially correct; those given by the court are, for the reasons above set out, erroneous.

The judgment is reversed and the cause remanded. All concur.