# RUDOLPH WURLITZER COMPANY, Respondent, v. TEKLA ROSSMANN, Appellant.

St. Louis Court of Appeals. Submitted on Briefs, October 4, 1916. Opinion Filed November 6, 1916.

1. **BILLS AND NOTES:** Defenses: Failure of Consideration: Statute. Under Sec. 9999, R. S. 1909, the absence of consideration for a promissory note is a matter of defense as against any person not a holder in due course.

2. ———: Sufficiency of Consideration: Benefit to Third Party. It is not necessary that the consideration for a promissory note pass directly to the maker, but it is sufficient if it passes to a third party.

3. **ACTION:** Equity: Mistake of Fact. Mistakes of fact are not cognizable by a court of law in a purely legal action, equity having exclusive jurisdiction, by an action for reformation.

4. **BILLS AND NOTES:** Defenses: Mistake in Signature. In an action at law upon a promissory note, the fact that the maker, through mistake, signed a note so as to bind himself individually, instead of signing in a representative capacity, so as to bind his principal, is not available as defense; the remedy being in equity.

5. ———: Varying Terms: Mistake in Signature: Parol Evidence. Parol evidence is not admissible, in an action at law, to vary or change the effect of negotiable instruments; so that, in an action at law on a promissory note, parol evidence that the maker had, through mistake, signed a note so as to bind himself individually, instead of signing in a representative capacity, so as to bind his principal, was inadmissible.

6. ———: **Mistake in Signature: Liability of Maker.** Where promissory notes, given for goods purchased by a corporation, were signed by the corporation by its president, followed by the signature of another person, with no official designation whatever, the latter signer was liable thereon to the payee, under Sec. 9991, R. S. 1909, although she was, in fact, the secretary of the corporation.

7. ———: ———: ———. Where promissory notes, given for goods purchased by a corporation, were signed by its president as an individual, and by another with the word "Secy." affixed to her name, the notes containing no other reference to the corporation, the latter signer was liable thereon to the payee, under Sec. 9991, R. S. 1909, although she was, in fact, the secretary of the corporation.

8. **COURTS: Bills and Notes: Rules of Decision.** Settled rules of law, governing commercial paper, cannot be set aside because their application in a particular case will result in hardship.

Appeal from St. Louis City Circuit Court.—*Hon. Leo S. Rassieur,* Judge.

AFFIRMED.

*Chester H. Krum* for appellant.

(1) The notes sued on were wholly without consideration passing to appellant. (a) Absence of consideration is a matter of defense as against any person not a holder in due course. Rev. Stat., sec. 9999. (b) Respondent was not a holder in due course—the notes never having been negotiated. (c) The court expressly found that no consideration passed to appellant. The situation upon the record is that appellant was secretary of a corporation for which she signed the notes sued on, as such secretary. This was the case, even where she signed without her official character being named. The defense she interposed was clearly within the statute and should have been sustained. (2) The finding below cannot be sustained upon some hypothesis of accommodation. (a) Appellant was not an accommodation maker. She mistakenly signed without indicating in what capacity she signed. (b) It is impossible to distinguish the case, in principle, from Chicago, Etc., Co. v. Brady, 165 Mo. 197, 205.

*Charles A. Houts* for respondent.

(1) The evidence showed, and the court found, that the notes sued on were for the purchase price of pianos sold to the International Electric Piano Company. The pianos were consideration for the notes. (2) The court properly refused to allow defendant to show that she signed the notes as an officer of the corporation, not intending to bind herself personally, because: (a) There was no testimony that any such intention was communicated to the plaintiff. (b) As to the first two notes, nothing appeared on the face of the notes to indicate that she signed as an officer of the corporation, nor was there any ambiguity as to her relationship to these two notes. Myers v. Chesley, 177 S. W. 326; Mineral Belt Bank v. Zinc Company, 173 Mo. App. 634. (c) As to the remaining notes, the name of the corporation nowhere appeared, so that it could not be held; and the addition of the word "Sec'y" to defendant's name was simply *descriptio personae,* and did not relieve her from liability. Negotiable Instrument Act, secs. 9989-9991, R. S. 1909; Myers v. Chesley, 177 S. W. 326; Mineral Belt Bank v. Zinc Company, 173 Mo. App. 634; Bigelow on Bills and Notes, pages 30 and 31; Norton on Bills and Notes, page 66; Ogden on Negotiable Instruments, page 26; Bunker on Negotiable Instruments, pages 65 and 66; Calvert's Daniel on Negotiable Instruments, sec. 305; Studebaker Mfg. Co. v. Montgomery, 74 Mo. 101; Sparks v. Dispatch Transfer Co., 104 Mo. 531; San Bernardino Nat'l Bank v. Anderson, 32 Pac. 168 (Cal.); Davis v. England, 141 Mass. 587; Keokuk Falls Improvement Co. v. Kingsland, 47 Pac. 484 (Okla.); Mellon v. Moore, 68 Me. 390; Kohrs v. Smith, 45 Mont. 467. (3) The defendant did not include in her motion for a new trial as a ground for a new trial the alleged error of the court in excluding testimony that she signed the notes as an officer of the company, not intending to bind herself personally; hence, on the record, she cannot now avail herself of this defense. (4) The court properly allowed a reason-

able attorney's fee, as provided in the first two notes. Ogden on Negotiable Instruments, pages 409-411; Bank v. Sutton Mfg. Co., 57 Feb. 191.

STATEMENT.—This action was brought against the appellant on nine promissory notes. The first and second are of date September 8, 1909, each for $60. After the date they read:

"Eleven months after date, for value received, I promise to pay to the order of the Rudolph Wurlitzer Company sixty dollars, payable ——at——with interest thereon from date at the rate of 6 per cent. per annum, with exchange at the current rate and with cost of collection and an attorney's fee in case payments shall not be made at maturity."

Following this and in the first person singular is a clause waiving the benefit of all exemption laws and authorizing any attorney at law to appear in any court of record "for me" in any action on the note, and waiving issue of service and confessing judgment, etc. This is signed,

"INTERNATIONAL ELECTRIC PIANO Co.,
M. D. GROSS, Pres.
TEKLA ROSSMANN."

Of the remaining notes, six of them for $50 each, and one for $20, all dated February 4, 1910, after the date read:

"Six months after date we promise to pay to the Rudolph Wurlitzer Company or order $50, for value received, with interest from February 4, 1910, at the rate of 6 per cent. per annum until paid, and we agree to pay same at 912 Pine Street."

Each of them is signed,

"M. D. GROSS,
TEKLA ROSSMANN, Secy."

The petition counting on these nine notes, prays for judgment for the amount of them and interest, as also for attorney's fees as to the first and second.

196 M. A.—6

The answer, after a general denial, and taking up each note in a separate paragraph, sets out as to the two notes for $60 each, that appellant Rossmann, on or before September 8, 1909, was secretary of the International Electric Piano Company, a corporation having its office in the city of St. Louis, incorporated under the laws of this State, and engaged in selling electric pianos and piano players; that on September 8, that corporation was selling almost exclusively the electric pianos made by plaintiff, it buying all of them from it; that the notes sued on are wholly and entirely without any consideration and therefore not binding on this defendant; that on September 8, the date upon which the first two notes were executed, the International Electric Piano Company, in the ordinary course of business, bought a number of pianos from the plaintiff and gave to plaintiff a chattel mortgage and its notes as security for the purchase price of the pianos, and that these two sixty-dollar notes are notes of the International Electric Piano Company given for the purposes aforesaid, and that they were signed by defendant (appellant here) as an officer of that company, and in the ordinary course of business of that company, by authority and direction of the company and as and for an obligation of the company, intending thereby to bind the company only, all of which facts were known to plaintiff, as is alleged, and done by and with the consent of plaintiff and accepted by plaintiff as the note and obligation of the International Electric Piano Company.

It is further averred that her signatures on the notes are not her individual signatures but her signatures as an officer of the International Electric Piano Company and as and for the obligation of that company; and that no consideration moved to her for signing the notes. Further answering defendant states, on information and belief, that the plaintiff foreclosed on the chattel mortgage referred to, and in pursuance of this foreclosure sold the pianos and that the proceeds of the sale were sufficient and fully paid and satisfied the notes. Averring that no

notice of protest or dishonor of these notes had ever been given defendant, she prays that she be discharged from the action with her costs.

The answer as to the remaining notes is practically identical in its averments with the foregoing, save as to the change necessary by the difference in the date, all these latter notes being dated February 4, 1910.

It does not appear that any reply was filed but the case was treated as being at issue on the petition and answer. A jury was waived and the cause heard before the court, the notes referred to being offered in evidence, without any objection.

It was admitted that the six fifty-dollar notes and the twenty-dollar note were secured by chattel mortgages executed by the International Electric Piano Company to plaintiff, on a piano bought by the former company from the latter, and that from the selling price of the piano the plaintiff received the sum of $230 on November 2, 1912. The mortgage referred to was offered in evidence but is not in the abstract. There was evidence as to the value of the services of the attorney in bringing the action, and plaintiff rested.

Defendant in her own behalf offered the record of the voluntary assignment of the International Electric Piano Company, in the proceedings under which the plaintiff had presented for allowance all the notes referred to except the first and second. This was objected to but the objection overruled. This record is not in the abstract before us, and we have no evidence of its contents or scope, other than above. The two chattel mortgages referred to were also introduced but they are not before us; how and by what officers executed does not appear; it is stated, however, that they covered all the notes except the two for $60 each.

Defendant thereupon took the stand as a witness in her own behalf and stated that her connection with the International Electric Piano Company on September 8, 1909, and February 4, 1910, as well as before, between and after those dates, was that of secretary; that she never had any dealings personally with plaintiff and

did not personally buy any pianos from it and never owed plaintiff company anything. Admitting her signatures to the notes as signed, she testified that she never received anything personally, and she added that she had signed these notes as an officer of the company. This latter was objected to on the ground that the notes spoke for themselves. The objection was sustained, defendant excepting. Defendant repeating that she never received anything personally for the notes and was never obligated in any way to the plaintiff, stated that she had signed the chattel mortgage at the same time she had signed the notes; that when she signed these notes and when they were received by the plaintiff company, that company knew that she was an officer of the International Electric Piano Company; that that fact had been known to them for years. She further testified that the plaintiff company had been doing business with the International Electric Piano Company, certainly since 1906, possibly earlier. She was then asked: "Can you state to the court the procedure that was followed when the International Electric Piano Company bought pianos from the Rudolph Wurlitzer Company?" The court said: "Is not that an effort to change the terms of this written contract?" To which counsel for defendant said that they maintained, "that in a note, as between the original parties, where the payee of the note knew the capacity in which the defendant in this case was signing and accepted it with that knowledge—" The court: "Is not this changing the terms of that written contract? If the contract incorrectly recites what has taken place is not your remedy to reform it?" The court, however, announced that it would hear the testimony subject to the objection of counsel for defendant. Witness then answered: "The pianos have been secured by a mortgage given by the International Electric Piano Company and notes given in payment, and those notes payable different months and at different times and signed by the officers of the company." Plaintiff, then asked if the notes were ever presented to her for payment be-

fore the winding up of the business of the International Electric Piano Company, answered, "No;" that she had never been asked to pay these notes. This was her testimony in chief.

On cross-examination defendant admitted that payment had been demanded of her on the notes before the action was commenced; that at the time of the execution of the notes one Unger was manager of the business of the International Electric Piano Company and that she (defendant) had nothing to do with the active business of the concern; that Unger had presented the notes to her for signature and that she had never had any communication personally with plaintiff. The court asked her if these notes involved had not been given in payment of the merchandise received. Witness answered that the merchandise had been received by the company but not by her, and that all she ever learned with respect to the transactions was from some of the employees of the International Electric Piano Company, of which company Mr. Gross was president. The defendant, still on the stand as a witness, stated that she would like to show under what conditions she signed these particular notes. That was objected to and objection sustained. No exception to this ruling is noted.

Mr. Gross testified that he had been president of the International Electric Piano Company in 1909 and 1910. Shown the notes and asked under what circumstances they were signed, he answered that they were signed by himself and the defendant as officers of the company. This was objected to, but no ruling made. He was then asked to state the circumstances under which the notes had been signed and who asked him to sign. That was objected to but no ruling made nor answer given. He was then asked what the notes were given for and he answered that they had been given for pianos bought from the Rudolph Wurlitzer Company by the International Electric Piano Company; that at the time he was president and the defendant secretary

of the company.. Asked if he knew whether Mrs. Ross-mann, the defendant, had received any money or goods or any consideration for the signing of the notes, he said he did not know. This was the substance of all the testimony in the case.

The trial judge thereupon taking the case under advisement rendered a finding of facts not necessary to set out, it being sufficient to say that, in effect, he found that defendant was bound individually on the notes, that the consideration for the notes was the piano pur-chased by the International Electric Piano Company, that the notes were entitled to a credit of $230, and al-lowing $50 for an attorney's fee on the first and second notes, he rendered judgment in favor of plaintiff in the sum of $351.64.

Defendant in due time filed a motion for new trial, assigning four grounds: First, the verdict and judg-ment of the court is against the evidence and the weight of the evidence; second, is against the law under the evidence; third, is against the law and the evidence; fourth, in failing to give findings of fact requested by defendant. The motion for new trial being overruled, the plaintiff excepting, duly appealed to our court.

REYNOLDS, P. J. (after stating the facts).—It will be noticed that there is no complaint made in this motion as to the exclusion of evidence, nor does the requested finding appear. Learned counsel for appellant in his brief makes two points for reversal and we confine ourselves to them.

His first point is, that the notes were wholly with-out consideration, arguing that absence of consideration is a matter of defense as against any person not a holder in due course, and citing section 9999, Revised Statutes 1909, in support of this proposition. That section provides that absence or failure of consideration is a matter of defense as against any person not a holder in due course. It is also argued under this first point that respondent was not a holder in due course, the notes never having been negotiated, and it is stated

that the court expressly found that no consideration passed to appellant. Disposing of this last proposition, it is sufficient to say that the court found there was consideration for the notes.

Taking up the remainder of the point, while it is true that no consideration passed personally to appellant, it is abundantly clear that there was a consideration for the notes as between the two companies; in point of fact, every count of the answer admitted there was a consideration for the notes, it being averred that they were given for a piano purchased from plaintiff by the International Electric Piano Company. That the consideration did not pass to the plaintiff herself is entirely immaterial. It is hornbook law that if A purchases goods from B, for which he does not immediately pay, and that C and D give their note to B for A's debt, the consideration between A and B is sufficient to support the note of C and D given to B on that consideration. We are therefore unable to agree with the proposition of learned counsel, that the defense interposed was clearly within the statute referred to and hence should have been sustained.

The second point argued by learned counsel for appellant is that the finding below cannot be sustained upon some hypothesis of accommodation, because: first, appellant was not an accommodation maker but had "mistakenly signed without indicating in what capacity she signed;" and, second, that it is impossible to distinguish the case in principle from that of Chicago Title & Trust Co. v. Brady, 165 Mo. 197, l. c. 205, 65 S. W. 303. It is also argued under this point by learned counsel for appellant that she had "signed the note as the company's note. She omitted the proof of that fact from the face of the paper. This is all that can be figured out of the case."

Admitting that plaintiff had "mistakenly signed without indicating in what capacity she signed," that mistake is to her own hurt and cannot avail her in this action. Mistakes of fact may be relieved in a

court of equity, but are not cognizable by a court of law in a purely legal action. So the learned trial judge intimated; that is, if appellant had brought an action for the reformation of the notes, they still being in the hands of the original party, or of one having notice, that action might have been maintained. But she did not do that and attempted in this proceeding to vary the written contract by parol, a thing she could not do. The fact here admitted by her counsel, that appellant "had omitted proof of that fact (of her representative capacity) from the face of the paper," is fatal in this action.

There have been decisions in which it seems to have been held that a party signing a note and attaching to his signature the designation of an office he holds, cannot be held personally. But when the decisions of our own State are examined, which are claimed to so hold, it will be found that there was something in the body of the instrument itself or in the manner of the signature, to allow evidence to be introduced to explain the apparent ambiguity.

The last decision of our Supreme Court treating of this, to which our attention has been called, is that of Spark et al. v. The Dispatch Transfer Co., 104 Mo. 531, 13 S. W. 417. There Judge GANTT, who wrote the opinion, has carefully reviewed the authorities which are claimed to throw any light upon the point, not only in our own State but by text-writers and courts, both of the United States and of other courts. Even in that case, with all the decisions of our Supreme Court before him on questions at all germane to the question, Judge GANTT has said (l. c. 541), that the exact question presented there, that is, the liability of the defendant company on the notes signed by its president in his own name and without any reference to the corporation in the body or in the signature, had not been passed on by our Supreme Court. The Sparks case, supra, was an action upon given notes, two of them ordinary promissory notes, payable at a day named and for value received, signed "Dispatch Transfer Co., by S. Jack-

son, President.'' The remaining three notes were in the ordinary form of negotiable promissory notes and signed, ''S. Jackson.'' The plaintiff Sparks and others sued the Dispatch Transfer Company on these notes. The jury returned a verdict in favor of the plaintiff on all of them. Parol evidence was admitted at the trial to show that the defendant corporation was liable on the three notes signed by its president in his individual name without any reference in the notes themselves or in the signatures to any official character, there being evidence, however, to the effect that the mules, for the purchase of which these notes had been given, were purchased for the use of the defendant company. Judge GANTT, after stating that the precise point was new in our State, as above noted, says that it has been long settled in many of our sister States, citing a number of decisions. He refers to and quotes from Pentz v. Stanton, 10 Wend. 271, as carrying the conclusion arrived at upon the examination of authorities in England and in the different States of the Union (1. c. 542) as being to the effect ''that no person can be considered a party to a bill, unless his name, or the name of the firm of which he is a partner, appears on some part of it.'' He states this as a rule universally accepted as law by recent text-writers, referring to them, and designates paper which contain no such indicium and is signed in that way as, '' 'a courier without luggage,' whose countenance is its passport; and, in suits upon negotiable instruments, no evidence is admissible to charge any person as a principal thereto, unless his name in some way is disclosed upon the instrument itself.'' Judge GANTT adds: ''And another good reason for the rule is, that every part of commercial paper must be definite and certain and contained in the body of the paper itself, so that every taker and holder understands exactly what his rights in and to it are, and with whom he is contracting.'' Judge GANTT further approvingly quotes from Mechanics'

Bank of Alexandria v. Bank of Columbia, 5 Wheaton 326, 1. c. 336, this: "But the fact that this appeared on its face to be a private check, is by no means to be conceded. On the contrary, the appearance of the corporate name of the institution on the face of the paper, at once leads to the belief that it is a corporate, and not an individual, transaction; to which must be added the circumstances that the cashier is the drawer, and the teller the payee; and the form of ordinary checks deviated from the substitution of *to order,* for *to bearer.* The evidence, therefore, on the face of the bill, predominates in favor of its being a bank transaction." The conclusion of our Supreme Court in the Sparks case, supra (1. c. 548), is to the effect that in view of the law, the trial court erred in the admission of parol evidence to show that Jackson executed three of the notes sued on as notes of the corporation.

That case is the converse of the one before us, but its principle is here applicable. While it was decided before the adoption in 1905 of our Negotiable Instrument Law, chap. 86, Revised Statutes 1909, we think it is in entire harmony with what is now section 9991, Revised Statutes 1909, a section in that law.

By that section it is provided:

"Where the instrument contains or a person adds to his signature words indicating that he signs for or on behalf of a principal or in a representative capacity, he is not liable on the instrument if he was duly authorized; but the mere addition of words describing him as agent, or as filling a representative character, without disclosing his principal, does not exempt him from personal liability."

In our judgment this section is conclusive of the proposition here involved.

While on the first two notes the name of the International Electric Piano Company appears, followed by the signature, "M. D. Gross, Pres.," the signature of appellant following has no official designation

whatsoever and in the remaining notes no reference whatever to any corporation appears; they are ordinary promissory notes, signed, "M. D. Gross, Tekla Rossmann, Secy." Clearly on the two first notes appellant signed and is bound individually. We know of no rule which prevents an individual signing a note as maker with a corporation. That is exactly what this appellant did as to the two first notes. In the remaining seven notes the word or abbreviation "Secy.," appears, but the name of the International Electric Piano Company nowhere appears either as a party or signatory.

We are aware that there has been some diversity of opinion even since the enactment of this statute among some of the courts of States in which the Negotiable Instrument Law has been adopted, as to the proper construction of this provision; those decisions adhering to older decisions. But as we had occasion to say in Walker v. Dunham et al., 135 Mo. App. 396, 115 S. W. 1086, when our State, as the result of efforts made by the members of the American Bar Association, and following many other States, adopted the Negotiable Instrument Act, the very purpose of that act was to harmonize the law and to establish uniformity of law throughout the several States of the Union on the subject of negotiable instruments. It would avail very little for our legislative branch of the government to attempt, by legislation, to adopt a uniform system of laws on any subject and for the judicial department—the courts—to depart as widely as ever from each other as before, in construing the same provision in that law. Such a course certainly does not tend to the promotion of harmony and uniformity throughout the Union on a matter of so great importance as that involved in the construction of negotiable instruments.

The only decisions by any of our appellate courts on the point here involved, rendered since the adoption of our Negotiable Instrument Law, and on notes

falling under it, are Stephenson v. Joplin State Bank, 160 Mo. App. 47, 141 S. W. 691, and Myers v. Chesley, 190 Mo. App. 371, 177 S. W. 326, decisions rendered by the Springfield Court of Appeals. In both these decisions we think that that learned body recognized the law to be as we here hold. In the Myers case, supra, the note was held, and we think, correctly, to fall within section 9991 of our Negotiable Instrument Act. In the very note there involved it appeared on its face that the defendant there had signed "for or on behalf of a (named) principal or in a representative capacity." Each of these decisions is in line with that of Sparks v. Dispatch Transfer Co., supra, and with what we here hold.

We hold, therefore, that the learned trial court committed no error in excluding the parol evidence which was offered to vary and counteract the plain provisions of these several notes.

Learned counsel for appellant has himself stated that appellant was not an accommodation maker but that she "mistakenly signed without indicating in what capacity she signed." Her mistake is one of which she must herself suffer the consequences, unfortunate as they may be for her.

When that counsel, however, asserts under the second subdivision of his second point, that it is impossible to distinguish the case at bar in principle from that of Chicago Title & Trust Co. v. Brady, 165 Mo. 197, and referring, as he does, especially, to page 205, we are unable to agree with him. That was a case in which there was no consideration whatever. For the purpose of swelling the apparent assets of the bank, of which they were officers, Brady and another officer executed their notes to the bank. The bank subsequently becoming insolvent and going into the hands of a receiver, that receiver, the Chicago Title & Trust Company, sued Brady upon the notes. It was very properly held there, not only by reason of this being an accommodation paper, but because there was no consideration whatever to anyone, that the receiver could

have no higher title in the paper than the corporation it represented; could not recover as against the defendant. That is very far from the case at bar, for here, contrary to the assertion of the learned counsel for appellant, the trial court did find as a fact and as we have before set out, that there was a consideration for the note. here given; not moving, it is true, immediately to the defendant, here a party to the note, but to the corporation; and so the appellant herself pleaded.

This is probably a hard case on appellant, but we, as a court, cannot disregard or set aside rules which must be applied in the construction of commercial paper by the seeming hardness of a particular case.

Without going further into the case our conclusion is that the judgment of the trial court is correct and it is accordingly affirmed. *Allen, J.,* concurs.