MINNIE PAXSTON, RESPONDENT, v. GILLAM-JACKSON LOAN & TRUST COMPANY, APPELLANT.*

Kansas City Court of Appeals. June 6, 1927.

*Corpus Juris-Cyc References: Agency, 2CJ, section 205, p. 564, n. 96; section 257, p. 621, n. 73; section 272, p. 632, n. 65; section 688, p. 932, n. 2; section 733, p. 962, n. 19; section 737, p. 968, n. 53; Money Received, 41CJ, section 66, p. 63, n. 81; Witnesses, 40Cyc, p. 2618, n. 26.

*Shinabarger, Blagg & Ellison,* and *McCaffrey & Cook* for respondent.

*Cook & Cummins* and *A. F. Harvey* for appellant.

ARNOLD, J.—This is an action for money had and received. Defendant is a trust company organized under the laws of Missouri with its place of business at Maryville in Nodaway county. S. G. Gillam is its president and F. R. Wolfers its vice-president and these two are its managing officers. Said company is engaged exclusively in the farm loan business and does no general banking. At Maryville is located, also, the First National Bank, organized under the Federal law governing such institutions and engaged in general commercial banking, but it does no farm loan business and is not a party to this action. At the time of the occurrence giving rise to this suit, one Joseph Jackson was its president and Roy F. Hanna its cashier.

The record discloses that the trust company and the bank are referred to therein as allied companies and that they so advertise themselves; that their places of business are in the same room, each occupying a separate portion thereof. The officers of the bank, in the main, are officers of the trust company and *vice versa.* Besides being president of the bank, Mr. Jackson is secretary of the trust company, and Mr. Gillam, 'president of the trust company, is vice-president of

the bank. Roy F. Hanna, cashier of the bank, was not an officer of the trust company. There is testimony tending to show the two were allied institutions, working together to a common purpose, offering the public joint service, through newspaper advertising, and that their financial statements were made as one.

On March 23, 1922, one William R. Williams and his wife, Viola, executed and delivered to defendant a note in the sum of $2500, with interest coupons attached, and all secured by a deed of trust on lands in Nodaway county. Some time prior to March 23, 1922, Minnie R. Paxston, the plaintiff, an elderly woman living at the home of her great nephew, L. B. Tracy, in Maryville, requested Tracy to go to the First National Bank in Maryville which was her depository at the time, and to procure for her a loan in the sum of $2500 to draw seven per cent interest and secured by deed of trust on real property. Thereupon Mr. Tracy went to the said bank and interviewed Mr. Hanna, the cashier, relative to such a loan. Mr. Hanna told him "We will see what we can do."

As a customer of the bank, Mrs. Paxston had a private box for her use which was kept in the vault of the bank where other private boxes were kept and in which she deposited her private papers. A few days after the interview with Tracy, Hanna advised him that "We have a loan which is of the nature Mrs. Paxston is asking for." Tracy gave this report to plaintiff and Hanna called upon plaintiff relative thereto. Thereafter, at the direction of Mrs. Paxston, Tracy prepared a check in the sum of $2498.55, drawn on the First National Bank at Maryville and payable to said bank, which plaintiff signed. There was a notation on the check to the effect that it was given in payment of a seven per cent. loan. Plaintiff then placed in Tracy's hands a key to her private box. Tracy went to the bank and informed Hanna that he had brought the check for the loan. Hanna received the check, sent to the desk of Mr. Wolfers, vice-president of the trust company, and received from him the Williams note indorsed in blank by the trust company, together with the deed of trust, and delivered them to Tracy. There is no dispute that the instruments just mentioned are the ones delivered to Tracy. They were received by Tracy and placed in plaintiff's private box in the bank vault.

It appears the private boxes kept by the bank for the use of customers are so constructed that two keys are required to open them, one called the master key, kept in the bank's custody and the other retained by the customer. After placing the note and deed of trust in plaintiff's private box Tracy returned to the hospital where plaintiff was confined and delivered the key to her.

The first interest coupon upon the Williams note was due April 1, 1923, and about that time Williams went to the offices of defendant, paid the interest and received the cancelled coupon; defendant issued

its check therefor, payable to plaintiff and caused the amount to be deposited in the First National Bank to her credit. Soon thereafter the bank sent plaintiff a statement of her account which showed she had a credit of $175.20 in the bank as interest paid to her on the Williams loan. Thus the matter stood for some time.

In the fall of 1924, plaintiff, then in her 79th year, again became incapacitated and was in need of money. Sometime before this she had moved to Bedford, Iowa, some thirty or forty miles from Maryville. Mr. Tracy had left Maryville and was living at Marshall, Mo., and plaintiff wrote him asking him to go to Maryville and get the Williams note and deed of trust from her private box, and cash said note for her pressing needs in her illness. Thereupon Tracy went to Maryville and upon unlocking plaintiff's box, discovered the Williams note and deed of trust were not there, but, instead, he found another and worthless note and deed of trust for a similar amount. This situation was called to the attention of Joseph Jackson, president of the bank, and he went with Tracy to Mr. Wolfers. The latter upon referring to his files and index cards found plaintiff had purchased the Williams note from the trust company, and that the trust company had paid Roy Hanna the sum of $2500, plus interest to date, received from Hanna the original Williams note and deed of trust, and had caused same to be cancelled of record.

The investigation further revealed that sometime prior to the second interest-paying date, Williams, for the purpose of buying other interests in land, desired more money; for that purpose he and his wife executed a new note to defendant in the sum of $3500, secured by a new deed of trust, leaving the entire amount with Mr. Gillam, president, to pay off the original note of $2500, purchased by plaintiff, and to send the remainder to Williams. It appears this transaction took place early in 1924. There is testimony tending to show that at the time of this latter transaction, Gillam informed Williams that an old lady owned the original note, that the trust company would have to send for it and several days would be required to get it. The record shows Gillam told Hanna the original loan would be taken up. A few days later Hanna delivered the note and deed of trust to Gillam who instructed the bookkeeper to give Hanna a check for $2500, plus accrued interest to date, made payable to Hanna.

On cross-examination Gillam testified that at the time of the execution of the Williams second deed of trust, he assumed that Mr. Hanna did not own the original note and that at the time he gave him the check in payment therefor, he gave the matter of the ownership thereof no serious thought. He stated he assumed plaintiff owned the note but he gave no serious thought to the matter as to whether he was paying Mr. Hanna as the owner or as agent for plaintiff. It further appears that at the time he received the note from Hanna there was

a lead pencil notation of the name "Minnie Paxston" on the mortgage in the handwriting of Wolfers. The witness further testified he did not know plaintiff still owned the original note and deed of trust, but believed she did.

The record shows that when the check given to Hanna by Gillam was returned to the trust company it was without any indorsement whatever. As above stated, the note and deed of trust purchased by plaintiff bore date March 23, 1922, due and payable April 1, 1927, with the privilege of paying $100 or any multiple thereof at any interest paying date, on or after the first year; and that the check given Hanna to take up the note was dated approximately a month prior to the due date of the second interest coupon.

The check given Hanna in the sum of $2663.70 was cashed by him and $163.70 thereof placed to the credit of plaintiff in the bank. What disposition Hanna made of the $2500 is not shown but plaintiff asserts a claim for this amount against the defendant trust company. The record shows Hanna was discharged from the bank and at the time of the trial was living in the city of St. Joseph. He was not at the trial, although subpoenaed, and did not testify. The death of the plaintiff, Mrs. Paxston, has occurred since the trial in the court below and the cause has been revived here in the name of the administrator of her estate.

The petition alleges that on January 4, 1924, defendant received from William R. Williams, to the use of plaintiff, the sum of $2675; that, being indebted to plaintiff in said sum, defendant promised to pay same to plaintiff and that payment thereof was demanded but refused. Plaintiff alleges that prior to said January 4, 1924, she was the owner of a certain real estate mortgage, executed by one William R. Williams and wife, dated March 23, 1922. Then follows a description of the note, its maturity date and description of the interest coupons attached, and the option or paying on the principal thereof at each interest paying date the sum of $100 or any multiple thereof.

The petition further alleges that said note and interest were payable at Gillam-Jackson Loan & Trust Co. at Maryville, Mo.; that on or about said 4th day of January, 1924, the said defendants received to the use of plaintiff from William R. Williams the sum of $2675, being payment in full of said note and interest which in equity and good conscience belongs to plaintiff. Judgment is sought in the sum of $2675 with interest thereon from the date of demand, January 11, 1924, together with costs of suit. By leave of court the last two paragraphs were amended to read as follows:

"Plaintiff further states that on or about the said 4th day of January, 1924, the said William R. Williams paid to defendant to the use of plaintiff, and the defendant received from said Williams to the use of plaintiff, the said sum of $2675, being payment in full

of said note and interest, which in equity and good conscience belongs to plaintiff and which, since on or about March 10, 1924, the defendant has withheld from plaintiff wrongfully and in bad faith.

"Wherefore plaintiff prays judgment against defendant in the sum of $2675 together with interest at seven per cent. per annum thereon from the March 10, 1924, with her costs in this behalf expended."

Thereupon the defendant filed a demurrer to said petition charging it states two different and individual causes of action in one count, and in connection with said demurrer, moved the court to require plaintiff to elect as to which cause of action she desired to proceed upon, to the end that defendant might file answer or plead thereto, and charged that neither of said causes of action pleaded in the petition, nor both of them together, is sufficient to constitute a cause of action.

The regular judge of the Nodaway circuit court being unable to hold the remainder of the April term, 1926, requested the Hon. GUY B. PARK, judge of the 5th judicial circuit, to hold the remainder of the term, and accordingly the cause was tried before Judge PARK. The demurrer theretofore filed was overruled and defendant then filed answer admitting the corporate existence of defendant as alleged, and making general denial of all other allegations of the petition.

As affirmative defense, the answer avers that defendant, on April 1, 1922, was the owner and in possession of the negotiable promissory note described in plaintiff's petition, together with the coupons thereto attached; that, being such owner and holder of the same for value, defendant endorsed same in blank and delivered them to one Roy F. Hanna; that thereafter, on about April 4, 1923, the payor of said note left with defendant the sum of $175 for the purpose of having defendant pay and satisfy the interest coupon of said note due April 1, 1923; that said Hanna, to whom defendant had delivered said note and coupons, presented to defendant coupon No. 1, endorsed in blank, and upon surrender and delivery to defendant of said coupon, defendant turned over to said Hanna the sum of $175, and delivered to the payor Williams, the coupon so received. That thereafter and before the maturity of said note, said Williams, desiring to pay said note in accordance with its terms, left with defendant for the purpose of paying off said note and accrued interest, the sum of $2663.71; and thereafter, the said Hanna presented to defendant the said note and the remaining coupons attached thereto, all indorsed in blank, at its office in Maryville, Mo., and surrendered and delivered same to defendant for use of the payor thereof for release of record; and defendant, on behalf of said Williams, delivered to said Hanna the said sum of $2663.71; that defendant, thereupon, released the record of said trust deed, caused said note to be cancelled and delivered to said Williams.

That defendant, acting in good faith and without any other or further information as to said note, and relying upon the fact that said Roy F. Hanna was in sole possession of said note, negotiable and subject to delivery without further indorsement, being indorsed in blank, this defendant became the owner and holder of said note for value and for the use of the said Williams; that if plaintiff had any right, title or interest in or to said note, she is estopped as against defendant by reason of the premises aforesaid, and by reason of the fact that plaintiff, knowingly, suffered and permitted said Roy F. Hanna to have full charge of said note, negotiable without further indorsement and indorsed in blank, as aforesaid, and to handle the same and to act in the premises and appear to defendant to have full right, power and authority to collect same and to deliver and surrender said note when paid, as plaintiff's agent; and defendant, relying and acting thereon, paid over to said Hanna the said money, acting at all times in good faith and for a disclosed principal, Williams.

After admitting some immaterial allegations of defendant's answer, the reply denies each and every other allegation in said answer contained. As further reply, plaintiff alleges that at the time defendant paid to Roy F. Hanna the said sum of $2663.71 and received from him the said note, coupons and deed of trust, said Hanna had no right, title or interest therein, and no right to receive money thereon; that said Hanna wrongfully and fraudulently abstracted said papers from plaintiff's deposit box and turned them over to defendant and received said money in his own name and on his own account, without the knowledge, consent or authority of plaintiff; that all said facts were then and there known to defendant and that defendant had actual knowledge of the said Hanna's lack of title and right to said papers, and that in paying said money to Hanna and taking said papers, defendant knowingly acted in violation of plaintiff's rights and in bad faith.

The cause was tried to a jury, resulting in a verdict and judgment for plaintiff in the sum of $2562.50. Motions for new trial and in arrest were duly filed and defendant has appealed.

The first point urged in support of the appeal is that the trial court erred in overruling defendant's demurrer to the petition and the motion in arrest of judgment, because the petition fails to allege the debt was due plaintiff when the suit was instituted. The amendment by interlineation charges defendant with receipt of the money in question; that it belonged to plaintiff and was wrongfully withheld from her by defendant. The same question arose in the case of Sidebottom v. Sidebottom, 215 Mo. App. 513, and this court held against the contention of the defendant. It was held, in effect, that where a petition alleges the defendant received money belonging to the plaintiff and which defendant retained, a cause of action for money

had and received is stated. To the same effect are Antonelli v. Basile, 93 Mo. App. 138, and Johnson-Brinkman Co. v. Bank, 116 Mo. 558. Defendant's citations on this point are found not to be the contrary. It follows there was no error in the respect charged.

It is argued that, having admitted she permitted Hanna to purchase the note for her and to have its care and custody and to collect the interest thereon—the note being indorsed in blank—plaintiff is estopped to deny Hanna's right to deliver the note to defendant and to receive the amount due thereon. This charge is based upon defendant's theory that Hanna, in fact, was plaintiff's agent in the transaction. However, the question of agency is a controverted issue in the case and therefore was for the jury to determine. There was testimony from which the jury reasonably might conclude that Hanna was not plaintiff's agent for the purchase of the note; that his only duty, if any, was to collect the interest for plaintiff when due and place same to the credit of plaintiff in the bank of which Hanna was cashier. There was testimony which showed that in fact he did collect the interest and deposit it to plaintiff's credit.

It is the general rule as laid down in 21 R. C. L., p. 869:

"A power to collect implies only an authority to demand and receive the thing due on an obligation, and not an authority to commute for any other thing. [Martin v. U. S., 15 Am. Dec. 129.]"

The same authority holds that even though an agent be clothed with authority to receive payment of an obligation, this does not authorize him to receive payment before it is due. [Citing Park v. Cross, 76 Minn. 187, 78 N. W. 1107; Smith v. Kidd, 68 N. Y. 130, 23 Am. Rep. 157; Mann v. Robinson, 19 W. Va. 49.] In the case at bar there is testimony showing the collection of the principal of the note before maturity. Hence the above rule applies.

It is also urged that plaintiff, having received and retained the interest payment of $175 in 1923, and $163.70 interest due in 1924, out of the check for $2663.70, and $163.70 interest due in 1924 out of the check for $2663.70, ratified the acts of Hanna in delivering the note and accepting the check of $2663.70 in payment; that, having received and retained part, she is estopped to deny his authority to dispose of the note and collect the entire sum.

We are not impressed with this argument. There was testimony from which the jury well might find that defendant knew the note belonged to plaintiff and that in whatever Hanna did, even though it be not conceded he was the agent of plaintiff, he was acting as the owner of the note but in a representative capacity. This being true, defendant, under the law of agency, was bound to ascertain whether he had authority to collect and surrender the note. This situation is covered by sections 807, 808, Revised Statutes 1919. [See, also, Wurlitzer v. Rosemann, 196 Mo. App. 78, 190 S. W. 636; Scotland

Co. Bank v. Hohn, 146 Mo. App. 699, 125 S. W. 539.] We find nothing in the evidence tending to show that Hanna indicated by signature or otherwise that he was acting as agent for plaintiff and there was strong testimony to the effect that plaintiff was the owner of the note. This point must be ruled against defendant. The receipt and retention of the interest by plaintiff, in the light of the facts disclosed by the record, do not estop her from denying Hanna's authority to collect the principal.

The same ruling applies to defendant's charges of error numbered 4, 5, 6, 7, 8 and 9 which are likewise directed to the question of the agency of Hanna, although argued from different angles. We find no merit in the position of defendant in this respect and find nothing in the citations given to change our views.

It is urged plaintiff's instruction No. 1 is erroneous in that it places upon defendant the burden of proving that Hanna was plaintiff's agent in the whole transaction. This instruction tells the jury that if they find from a preponderance of the evidence that plaintiff owned the note in question at the time defendant paid Hanna therefor, and that defendant believed her to be the owner thereof, the verdict should be for plaintiff; unless they believed from a preponderance of the evidence that Hanna was authorized by plaintiff as her agent to collect the proceeds of said note; or that plaintiff permitted said Hanna to appear to have authority as such agent and that defendant relied upon such apparent authority, if any; and that the burden rests on the defendant to show such authority in the said Hanna, if any. It is clear the instruction was proper under the provisions of section 842, Revised Statutes 1919, as it faithfully follows the pleadings and the evidence and properly declares the law applicable thereto. [Atkins v. Brown (Mo. App.), 209 S. W. 502; Fuller Co. v. Drug Co. (Mo. App.) 282 S. W. 535.]

Appellant urges the court erred in refusing to discharge the jury on motion of defendant because, on cross-examination of defendant's witness Gillam, plaintiff's counsel indulged in unwarranted inferences, prejudicial in character, of criminal conduct on the part of the witness. Also, that he asked many questions touching the personal conduct of Roy Hanna in his business affairs and things long subsequent to the acquisition of the note by defendant, having no connection with it. We have carefully read the testimony referred to but find nothing therein beyond an attempt to lay a foundation for impeachment of Gillam. True, plaintiff's counsel admitted inability to furnish positive testimony in support of the implied purport of the questions, but this cannot be accepted as anything more than a failure to impeach. On motion, the court instructed the jury to disregard the matter and this is as far as the court could be expected to go. There was no error in failing to discharge the jury. [Stavinow v.

1110

Ins. Co., 43 Mo. App. 513; Anderson v. Terminal Co., 161 Mo. 411, 419; McGinness v. Loring, 126 Mo. 404.]

A further charge of error is directed against the ruling of the trial court in admitting in evidence advertisements from local newspapers, some of which were, subsequent to the purchase of the note from Hanna by defendant. We think the admission of this evidence was proper as tending to show the business relations between the bank and defendant as allied institutions; and there was other testimony tending to show they were so allied from the time of the incorporation of the trust company. The evidence complained of had a direct bearing on the vital points in issue. We find no reversible error of record and the judgment is affirmed. *Bland, J.*, concurs; *Trimble, P. J.*, absent.