CHICAGO TITLE & TRUST COMPANY, Appellant, v. BRADY.

165   197
97a   310
97a   312

### Division One, November 19, 1901.

1. **Accommodation Paper:** OMISSION OF WORDS "WITHOUT CONSIDERATION." In a suit upon notes, where the defense is that they were without consideration and given for plaintiff's accommodation, the mere omission of the words, "without consideration," from the instructions referring to the notes, is not error, if said instructions characterize them "as notes given for the accommodation of plaintiff" or "as notes obtained by the bank as a matter of accommodation."

2. ———: INSTRUCTIONS: BARREN TECHNICALITY: INTENTION OF PARTIES. Where an instruction as drawn is calculated to mislead the jury by a barren technicality, it is not error for the court to so modify it as to prevent the mischief and direct their attention to the real intention of the parties.

3. ———: BANK AS PAYEE: FRAUDULENT SWELLING OF ASSETS: RECEIVER'S RIGHT TO RECOVER THEREON. Notes executed and delivered to a bank for its accommodation, were wholly without consideration, and had never been negotiated by the bank or been out of its control or possession, but came into the hands of the receiver as assets of the bank. They were executed for the purpose of swelling the apparent assets of the bank, whereby the bank examiners and others might be deceived as to the bank's condition. *Held,* that the court did not err in instructing the jury that the receiver of the bank was in no better condition to recover judgment on the notes than the bank itself. The notes being without any lawful consideration at the time of their execution, no injurious consequences to the parties or others, which might afterwards have resulted from their having been

made, can constitute a valid consideration, or entitle the receiver to recover thereon.

4. ————: WHEN FRAUDULENT. Accommodation paper is not fraudulent or unlawful by reason of the fact that it swells the apparent assets of the person to whom it is given and that others may thereby be deceived as to the financial condition of such person.

Appeal from St. Louis City Circuit Court.—*Hon. D. D. Fisher,* Judge.

AFFIRMED.

*McKeighan & Watts* and *Shepard Barclay* for appellant.

(1) The facts admitted by defendant himself, as a witness, are binding on him with like effect as though parts of his pleadings in the cause. Shirts v. Overjohn, 60 Mo. 308; State v. Brooks, 99 Mo. 137; Payne v. Railroad, 30 S. W. 148. (2) On the facts admitted by defendant, the court erred in declaring the law to be that the plaintiff, as receiver of the Globe Savings Bank, was in no better position than the bank itself. Where the facts show that defendant aided the bank to obtain a fictitious credit, by means of devices such as here appear, a receiver maintains a superior position to the bank, and may recover on such notes as these, in behalf of creditors and stockholders of the bank. Alexander v. Relfe, 74 Mo. 495; 5 Thompson on Corporations, sec. 6495. (3) All of the defendant's bunch of $7,000 worth of notes (all in suit except the one described in the first count) were made and delivered to give the savings bank an ostensible credit, and to enable the bank to make a showing of the said notes, in expectation of an investigation of the bank by the Illinois State Bank Examiner. Defendant gave the notes to aid in that purpose. There will be a "loss, injury or inconvenience" to the promisee if defendant maintains his claim of immunity from responding to the notes. But such a "loss, injury or inconvenience" is a

valuable consideration for the notes themselves and sustains this action upon them. Am. and Eng. Ency. Law (2 Ed.), 722. Whether the consideration was adequate is immaterial. It was valuable, and that is enough. Worth v. Case, 42 N. Y. 362; Boggs v. Wann, 58 Fed. 681. (4) The court erred in modifying plaintiff's third instruction so as to eliminate the issue of want of consideration. That instruction, as asked, required the jury (as an essential to exonerate defendant) that they should find the note or notes to be "without consideration." The court struck out those words. That was error. Unless the notes were "without consideration" defendant was liable on them, for they import prima facie a consideration. (5) The court erred in destroying the force of plaintiff's sixth instruction by requiring the jury to find that the possession of the land conveyed by the deed of Spalding and wife to defendant was a valid consideration for his notes only "if so intended by him and the officers of the bank." This was error. The intent of the parties could not change the effect of the act, so far at least as concerned the rights of creditors of the bank, or of a receiver standing in their shoes. Atty.-Gen. v. Ins. Co., 77 N. Y. 272; Crandall v. Lincoln, 52 Conn. 73; In re Penn. Bank, 152 Pa. 65. (6) On the admitted facts, plaintiff was entitled to judgment on all the notes sued upon; and the court erred in refusing (as matter of law) to permit a recovery on any one of them. A consideration moving to a third party (here the creditors of the bank) is a valuable one to support a contract; and the facts show that defendant's notes were made to impart a public credit to the bank for the benefit of its creditors. That is a sufficient consideration. Beakes v. Da Cunha, 126 N. Y. 293; Johnston v. Bldg. Assn., 104 Pa. 394; Hunt v. Adams, 5 Mass. 358.

*Humphrey & Humphrey* for respondent.

BRACE, P. J.—The plaintiff is the receiver of the Globe Savings Bank of Chicago, and as such sues to recover upon six

promissory notes, one for $5,000, one for $4,200, and four for $700 each, executed by the defendant and delivered to said bank, and which were found by the receiver among the assets of the bank.

The answer of the defendant admits the execution and delivery of the notes to the bank and sets up as a defense thereto that they were so executed and delivered without any consideration, for its accommodation. The defendant introduced evidence tending to prove the defense set up in the answer, and the case was submitted to the jury upon the following instructions:

### FOR THE PLAINTIFF:

"1. The court instructs the jury that the plaintiff has sued upon six different notes, each of which constitutes a separate and distinct claim or cause of action in plaintiff's petition. Those claims are called 'counts' in the instructions to you by the court. Your verdict should state your finding or decision as to each count or cause of action separately. And if your finding is for the plaintiff, as to any one or more counts, you should also state in your verdict the exact amount which you find from the evidence to be still due and unpaid at the present time (including principal and interest to date) on each particular note mentioned in the count or counts of the petition on which you may so decide to find for plaintiff. .

"2. The court instructs the jury that the credibility of the witnesses who have appeared before the court at this trial is a matter for the jury to determine. Unless a statement of fact by a witness impresses you as true or worthy of your belief, you are not bound to accept such statement as proof of the fact so stated. You are authorized by law to reject any statement of any witness or witnesses that you may believe, under all the evidence, to be false or untrue, whether intentionally false or not.

"3. The court instructs the jury that the burden of proof is upon defendant in this case, and unless the jury believe from the evidence that defendant has established, by a preponderance of the testimony, his allegation in the answer that said notes (or some of them) were given by him for the accommodation of said bank (as explained in other instructions), then your verdict should be for the plaintiff as to all of the notes sued upon in this case.

"4. The court instructs the jury that, under the pleadings and evidence, the defendant has admitted the execution of all the notes sued upon by plaintiff in this case, and has admitted that plaintiff is the legal owner and holder of said notes. It is therefore the duty of the jury to find for the plaintiff as to each and all of said notes, unless the jury believe from the evidence that some one or more of said notes was obtained by the bank, as a matter of accommodation, as explained in other instructions.

"5. Referring to the first count (or claim on the $5,000 note), the jury are instructed by the court that if they find and believe from all the evidence that said note was signed and delivered by Mr. Brady to the bank (or to Mr. Spalding as its president) in order to raise funds for the benefit of the American Land Company, and that said company accordingly obtained a credit with the bank for $5,000, by reason of the said giving of said note by Mr. Brady, then said note was in law based on a valuable consideration; and if the jury find the facts to be as above stated, they should find for the plaintiff as to the $5,000 note and interest to date at the rate mentioned in said note.

"6. Referring to the group of notes for $7,000 (mentioned in the second, third, fourth, fifth and sixth counts), the court instructs the jury that the legal effect of the deed of trust (which has been read in evidence) and the said notes recited in said deed, is to indicate a transaction in which Mr. Brady issued the said notes as part payment of the purchase price of

certain land in North Dakota. The jury is further instructed that by his answer in this case defendant admits that the title to the land (described in the deed of trust) was conveyed to defendant before said deed of trust was executed by defendant. The court instructs you that the right to possession of said land, which defendant acquired by the admitted conveyance of title to him by Spalding, was *if so intended by him and the officers of the bank with whom he had the transaction,* a valuable consideration for the notes mentioned in the deed of trust and sued upon in this case."

FOR THE DEFENDANT:

"1.   If you find from the evidence in this case that the defendant, James H. Brady, signed and delivered all the notes in evidence in this case as an accommodation to the Globe Savings Bank, then your verdict should be for the defendant, James H. Brady, on all the counts in the petition.

"2.   If you find from the evidence that James H. Brady did, at the request of the officers in charge of the management of the Globe Savings Bank, sign and deliver any of the notes in question in this case for an accommodation to the said bank, then as to such notes so signed by Mr. Brady the plaintiff can not recover.

"3.   As between the maker and the payee of a promissory note, oral evidence touching the consideration thereof may be considered by you, and if you find from the evidence in this case that the defendant Brady received no consideration for the signing of the notes sued on, and that the same were made for the accommodation of the Globe Savings Bank, then your verdict should be for the defendant.

"4.   The jury are instructed, as between the party accommodated and the party accommodating, the latter can be under no liability to the former whatever the relation in which they are placed upon the paper; and in this case, if you find

from the evidence that James H. Brady was in fact an accommodation maker of the paper sued on, then he can not be held liable, no matter in what form the transaction was put.

"5.   This action is brought by the receiver, and he occupies the same position that the Globe Savings Bank would, had it brought the action in its own name before it was placed in the hands of a receiver.   The receiver has no greater rights in this case than the Globe Savings Bank possessed.   It does not occupy the position of purchaser for value.

"6.   If you find from the evidence that James H. Brady signed the notes sued upon in this case as an accommodation maker for the Globe Savings Bank, and delivered the notes to the bank or to one of its officers for the bank, he can not be held liable thereon no matter how the bank may have dealt with the notes, so long as it retained ownership and control thereof, and even though you find that the bank, after the notes were delivered to it, gave C. W. Spalding the benefit of the whole or a part of the benefit thereof, this fact would not render Brady, the defendant, liable on the notes.   And in this connection you are instructed that the possession of the receiver is the possession of the bank.

"7.   Where an accommodation note is diverted from the purpose for which it was given, one who takes it with knowledge can not recover from the accommodation party, and in this case the receiver possesses, as a matter of law, all the knowledge that the Globe Savings Bank possessed upon the subject of this note.

"8.   In bringing the action upon these notes, the Globe Savings Bank and this plaintiff adopt and ratify all the acts of its officers or agents by which the notes in question came into the bank; that is, when this plaintiff seeks to recover upon these notes from this defendant, it is bound by what the evidence in ths case shows to be the facts connected with the transaction."

The court refused to declare the law to be that the plaintiff was entitled to judgment upon the facts in evidence for

the amount claimed in any one of the counts of the petition.

The jury returned a verdict for the defendant upon all the counts of the petition, and the plaintiff appeals.

(1)     The only errors assigned for reversal are upon the instructions.     The words "without consideration" in instructions 3 and 4 for plaintiff, as asked, were omitted, and these instructions were given as herein set out.     We do not think that this omission could have been prejudicial to the plaintiff's case. "Accommodation paper is such as is made, accepted, or indorsed by one party for the benefit of another, without consideration" [1 Am. and Eng. Encyc. of Law (2 Ed.), 335.], and when the court in these instructions characterized the paper "as notes given by him for the accommodation of the bank," as in the third; and as "notes obtained by the bank as a matter of accommodation," as in the fourth instruction, it was the same as saying notes "without consideration."

(2)     The interpolation by the court of the words, "If so intended by him and the officers of the bank with whom he had the transaction" (in italics), in instruction numbered 6 for plaintiff, is assigned as error.     The facts disclosed by the defendant's evidence upon which this instruction was based, are briefly as follows:     Spalding was the president and manager of the bank.     He managed it as though he was the bank. The legal title to certain lands in North Dakota was vested in him for the benefit of the bank.     He was desirous of increasing the paper assets of the bank, and for that purpose executed a deed conveying these lands to the defendant, and simultaneously therewith procured the execution by the defendant of the note for $4,200, and the four notes for $700 each, aggregating $7,000, and of a deed of trust by the defendant conveying said lands in trust to secure the payment of said notes, and gave defendant a written statement that the notes were accommodation notes, and for payment thereof the land only would be looked to.     Thereupon, the notes and deed of trust went into the assets of the bank, and thereafter continued in its posses-

sion and control until the receiver was appointed. The defendant received no credit therefor, nor any other consideration. The defendant in fact received no consideration for these notes, and none was intended. The instruction as drawn and asked, was calculated to mislead the jury by a barren technicality, and the court committed no error in preventing the mischief by inserting therein, the words in question.

(3)   This brings us to the main contention of appellant's counsel, which seems to be, that although it appears from the evidence that all of these notes were executed and delivered to the bank for its accommodation; that they had never been negotiated by the bank, or been out of its control or possession, but came into the hands of the receiver with the other assets of the bank, yet, as it also appeared, from the evidence of the defendant himself, that the purpose for which they were so executed and delivered was simply to swell the apparent assets of the bank, whereby the state bank examiner and others might be deceived as to the condition of the bank, the court erred in holding by its instruction that the plaintiff "as receiver of the Globe Savings Bank was in no better position than the bank itself." And the argument in support of this contention seems to go to the length of maintaining that the court, upon this evidence, erred in holding that as against the receiver, the defense set up in the answer could be maintained. The defendant in the course of his examination, after testifying to a prior accommodation note given the bank and as to a contract of date October 15, 1895, between himself and Spalding and one Smith, in which he claimed that Spalding was indebted to him in the sum of $13,000, and that on the thirteenth of April, 1896, Spalding paid him the sum of $5,000 on said indebtedness by a credit of that date of that amount on the books of the bank to the American Land Company, of which the defendant was the president and manager, and which he managed as Spalding did his bank, as if it was his own, testified as follows:

"Q.   You may now state to the jury the facts with refer-ence to this note sued upon, dated April 15, 1896, and state what connection, if any, it had with the transaction?   A.  Late in the day of April 13, Mr. Spalding sent a messenger for me at my office.

"Q.   On the thirteenth?   A.   The thirteenth.   I went over to the office, but Mr. Spalding was not in.   I called at the bank the next day and he was not in.   I called on April 15 and he was in, but was down stairs in the small private office that he has in the back of the room.   I asked what he wanted and he said that the paying out of this money and the running down of accounts generally might injure him some, and it would be a great help to the bank if I would throw in my note for ninety days.

"Q.   For how much?   A.   $5,000.

"Q.   What else was said?   A.   I discussed the matter some; I don't remember the exact language that was used, but I told him I would be glad to do it, and I did it.   They drew up this note and I executed it and delivered it, I think, to W. Berry Irwin in the bank there.

"Q.   What was he doing in the bank?   What connection did he have with the bank?   A.   He was paying teller that day, I think."

As to the other notes sued on, in the course of his examin-ation, he testified as follows:

"Q.   Now, Mr. Brady, will you explain fully the facts and circumstances in reference to these six notes aggregating $7,000?   A.   About—

"Q.   Begin with June 30, 1896?   A.   About the twenty-fifth of June, 1896, Mr. Churchill, the cashier of the bank, came to me and said that they had a land transaction—

"Q.   Who was that?   A.   Mr. Churchill was the man who first suggested this deal to me, the cashier of the bank—that they had a land transaction that they wanted me to help them out on, and that Mr. Spalding wanted to talk to me as

soon as I got an opportunity, and that he desired him to call my attention to it the first time I came in the bank.

"Q. What Churchill is that? A. C. E. Churchill, the cashier of the Globe Savings Bank.

"Q. Now, tell me all he said about that? A. That is about all, that Mr. Churchill said. He told me he had suggested to Mr. Spalding I might be a means of helping them out of the difficulty.

"Q. Helping who out? A. The bank.

"Q. Go on. A. And either that day or the next day I met Mr. Spalding in the bank, and he conveyed to me the idea—

"Q. We want you to state what he said? A. I can't recollect the exact language.

"Q. Give us the substance of it? A. The substance of it was that the bank owned this land in Dakota; that the examiner was very severe on them and wanted them to cut down their line of real estate holdings.

"Judge Barclay: What examiner do you mean? A. The State Bank Examiner.

"Mr. Melville: He is speaking of the auditor. I think they call him the examiner.

"Judge Barclay: That is the State Auditor, who had powers of examination?

"Witness: They called it the examiner; at least he did. I remember he used the word 'examiner,' and he said they could use live papers so much better than they could use the land. He called my attention again to the fact that he had destroyed the first note long before it was due, and that the other note would be taken care of in a very few days. That is the $5,000 note which was in the bank at that time.

"Q. That is the one sued on here? A. That is the one sued on here. It was in the bank; and we discussed the matter some and I told him it was getting into a pretty large amount and he said he would give me a written guarantee to

protect me in the matter; not a guarantee: he didn't call it that; he called it a statement. I said it was a real estate transaction and there ought to be something of that kind; and that conversation also took place in the presence of Mr. C. E. Churchill, cashier of the bank. He said, 'The bank will give you a statement that this is accommodation paper.' I mentioned to him about the $5,000 note, and he said, 'I will include that also, but it is not necessary, because that will be taken care of in a day or two, but I will include that.' After considerable discussion over the matter, I agreed to execute this $7,000 worth of notes that are sued on in this case.

"Q. Did you do it? A. I did. They prepared them and I came into the bank, I think it was on the thirtieth of June—

"(Notes handed to witness.)

"Q. State whether or not the notes which I show you— the five notes which I show you—are the notes you refer to in that connection? A. Those are the notes.

"Mr. Melville: These are the notes mentioned in the declaration or complaint and are offered in evidence in connection with the statement.

"Q. Proceed, Mr. Brady. A. When I came in—we had discussed this matter, of course, a few days before—the papers were all prepared and ready to sign.

"Q. Do you know who had prepared them? A. I do not. Mr. Spalding was in the private office on the lower floor in the bank, and we looked over the papers and I called his attention again to the fact that I wanted a statement showing that these notes were accommodation notes. Mr. Spalding wrote that statement out in long hand and delivered it to me together with the notes which I had already executed."

It is upon this evidence that counsel for appellant base their contention that the defense in this action should not have been maintained. We find nothing in it, even tending to prove that the notes sued on were not accommodation paper—being

such, they were without consideration, which is always a defense to a suit upon such paper between the immediate parties. [1 Am. and Eng. Encyc. of Law, 350.]

"The appointment of a receiver does not have the effect of changing any rights of action, or of changing the contract relations existing between the original parties, against whom the receiver is appointed, and their debtors. A receiver, therefore, can not maintain an action upon a note or obligation running to the original party, which he himself could not have maintained. For the purpose of actions and suits connected with their receivership, receivers occupy substantially the same relation which was occupied by the original parties against whom or over whose estate they were appointed. Any defense, therefore, which a defendant might have made to an action brought by the original party in interest, is equally available, and may be made with the like effect when the action is instituted by his receiver." [High on Receivers (3 Ed.), secs. 204 and 205; Smith on Receiverships, sec. 70; Cox v. Volkert, 86 Mo. 505.]

As the defense would have been good, if no receiver had been appointed and the suit on the notes had been brought by the bank, so it must be held to be good against the action of the receiver. The fact that the effect of giving these notes was to swell the apparent assets of the bank and that such was the purpose of giving them, and that thereby the bank examiner, creditors and stockholders of the bank may have been deceived as to its condition, in no way changes the relation or rights of the parties. Accommodation paper is simply a loan of credit by the person making it, to the person to whom it is given, and its necessary effect is to swell the apparent assets of the latter, to the eyes of anyone to whom it is exhibited, but unless it is negotiated such person can acquire no right of action thereon by reason of that fact, nor does it supply a consideration for the paper. As was said in Agricultural Bank v. Robinson, 24 Maine loc. cit. 277: "If the doctrine were admitted

that the probability of loss or injury, which the creditors or stockholders of a corporation might sustain by its taking a note and making a false exhibit of its funds, constituted a sufficient consideration for it, it would be difficult for any one to avoid his contract with a corporation by proof of a want, or a failure of consideration. It would not be difficult, in many cases, for the corporation to prove that such contract had been exhibited, as constituting a part of its assets, and that debts had been contracted with those who relied upon such assets as a means of payment, or that its stock had been sold, and dividends declared upon it, on the faith that such contract constituted a part of its assets. But a more conclusive answer is, that there must be a consideration at the time of making the contract. And that no injurious consequences to the parties or to others, which may afterwards happen from their having made it, can constitute a legal consideration."

It is undoubtedly true that the receiver of a corporation, being not only its representative, but also a trustee of its assets for the benefit of its creditors and stockholders, may repudiate the fraudulent and illegal contracts of the corporation whereby those assets have been impaired, diminished or misappropriated, and maintain actions, in many instances, when such actions could not be maintained by the corporation itself, and this is the character of cases cited by appellant's counsel in support of their contention, but such is not the character of this case. The contract here is a lawful one. Accommodation paper is not fraudulent or unlawful by reason of the fact that it swells the apparent assets of the person to whom it is given, and that others thereby may be deceived as to the financial condition of such person, and the receiver in this instance is not repudiating the contract of the bank with the defendant, but is seeking to enforce it. In doing so he necessarily stands in the shoes of the bank with the same rights, no more and no less, and the defense of failure of consideration is just as good against him as it would have been against the bank, had no re-

ceiver been appointed, and the suit been brought by the bank. There was ample evidence to sustain the defense, and the verdict of the jury thereon is conclusive.

Finding no reversible error, the judgment of the circuit court is affirmed.    All concur.