## William C. Niblack, Receiver, Defendant in Error, v. John W. Farley, Plaintiff in Error.

### Gen. No. 23,518.

1. BANKRUPTCY, § 85*—*what does not constitute new promise.* Evidence that the partnership of which defendant was a member executed two notes to a national bank, one for $10,000 and the other for $1,500, which defendant indorsed; that thereafter the partnership and defendant were adjudicated bankrupts and that after such adjudication defendant executed to a State bank which had purchased the assets of the national bank a note for $11,500, *held* insufficient to show that the latter note was executed by reason of the moral obligation to pay the old indebtedness as against defendant's undisputed testimony that the note was given purely as an accommodation "to show the bank examiner."

2. BANKS AND BANKING—*when maker of note not estopped to show want of consideration in action by bank receiver.* A note given to a bank purely as an accommodation "to show the bank examiner" does not estop the maker from disputing liability on the ground of want of consideration, in an action by the receiver of the bank, where there is no evidence that any creditor was prejudiced or suffered any detriment by reason of such act.

Error to the Circuit Court of Cook county; the Hon. CHARLES M. WALKER, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1917. Reversed with a finding of fact. Opinion filed June 19, 1918. Petition for rehearing stricken July 5, 1918.

ROBERTS & SWAIN, for plaintiff in error.

LEWIS, FOX, BLUMBERG & ADELSDORF and HIRAM T. GILBERT, for defendant in error; JOSEPH W. MOSES and HENRY JACKSON DARBY, of counsel.

MR. PRESIDING JUSTICE TAYLOR delivered the opinion of the court.

The plaintiff, William C. Niblack, as receiver of the La Salle Street Trust and Savings Bank, having recovered judgment in assumpsit against the defendant,

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

John W. Farley, in a trial before the court, without a jury, this appeal was taken therefrom.

The declaration consists of (1) a special count upon a promissory note dated May 24, 1913, for $11,500, for value received, due on demand, payable to the order of the La Salle Street Trust and Savings Bank; and (2) the common counts. The defendant pleaded (1) the general issue; (2) want of consideration; (3) a discharge in bankruptcy. The plaintiff demurred to the plea of discharge in bankruptcy, and upon the demurrer being overruled, filed a replication averring a new promise made by the defendant on May 24, 1913, a time subsequent to the date on which the petition in bankruptcy was filed. To the latter replication the defendant rejoined, denying the new promise.

On October 16, 1911, John W. Farley and Company, having borrowed $10,000 from the La Salle Street National Bank, gave a promissory note to the latter bank signed with the firm name, payable in 90 days thereafter, and indorsed by the defendant, John W. Farley. On November 28, 1911, the same firm borrowed the further sum of $1,500 from the La Salle Street National Bank and gave therefor a demand note executed by the firm and similarly indorsed by the defendant. On December 12, 1911, John W. Farley and John A. Murphy, individually and as copartners, trading as John W. Farley and Company, filed their petition in bankruptcy in the District Court of the United States and were, on that day, adjudged bankrupt. The two notes above mentioned were duly scheduled and filed and on December 27, 1911, proven. Since then, neither in the bankruptcy proceedings nor otherwise has any part of the two notes, nor any interest thereon, been paid by any of the makers or indorsers. At the trial in the lower court, a certified copy of an order of the District Court of the United States in bankruptcy that the plaintiff, as surviving partner of John W. Farley and Company, be discharged from all debts and claims

provable against his estate and which existed on December 12, 1911, was offered in evidence, but, on objection to its admissibility being made by the plaintiff, it was ruled out.  On October 21, 1912, the La Salle Street National Bank was denationalized and on that date the La Salle Street Trust and Savings Bank was chartered and came into existence.  On that day the La Salle Street Trust and Savings Bank passed the following resolution:

"In consideration of the transfer and assignment by the La Salle Street National Bank of Chicago, of its cash, accounts receivable, bills receivable, bonds, stock, accounts and all other assets and credits of any nature or any kind to the La Salle Street Trust and Savings Bank of Chicago, this bank agrees to and does assume all the indebtedness of the La Salle Street National Bank of Chicago, of whatever kind or nature," etc. Subsequent and pursuant to that resolution the assets of the La Salle Street National Bank were taken over by the La Salle Street Trust and Savings Bank and the latter acted as liquidating agent, as far as was necessary, under the National Banking Act.  On November 28, 1911, the two original promissory notes of October 16, 1911 and November 28, 1911, were in the possession of the La Salle Street National Bank and so remained until October 21, 1912, at which time, pursuant to the resolution of October 21, 1912, they passed into the possession of the defendant, the La Salle Street Trust and Savings Bank.  During the pendency of the bankruptcy proceedings of the defendant and until October 21, 1912, the two notes of October 16, 1911 and November 28, 1911, respectively, were carried on the books of the La Salle Street National Bank as "live notes," that is, they were not, even after Farley's bankruptcy, charged off to profit and loss; and after October 21, 1912, when they were turned over by the La Salle Street National Bank to the La Salle Street Trust and Savings Bank—though without being

indorsed—they were carried by the La Salle Street
Trust and Savings Bank "as live assets for their face
amount up to the time of the failure of the latter bank
on June 12, 1914."

On May 24, 1913, the defendant executed and deliv-
ered to the La Salle Street Trust and Savings Bank
a demand promissory note in the sum of $11,500, being
the note that is specially declared upon by the plaintiff.
The testimony of the defendant, which is not materially
contradicted by other testimony but which, it is
claimed, is qualified by inferences from other circum-
stances which are in evidence, is to the effect that on
May 24, 1913, he had a conversation with one Charles
B. Munday, the vice president of the La Salle Street
Trust and Savings Bank, in which the latter asked him
to give him an accommodation note; that he, the de-
fendant, "told him a note from me would not be worth
anything"; that Munday then said, "You expect to be
in business here in Chicago, don't you?", to which the
defendant answered, "Yes"; that Munday then said,
"You go right along in your business and if you re-
quire any accommodations in the bank you come in and
we will let you have what you want to carry on your
business. I want a note from you to show to the bank
examiner"; that, further, Munday then asked him "as
an accommodation to him to give him my note that he
might show it to the bank examiner when he come (sic)
around"; that he, the defendant, answered, "All right,
Mr. Munday, I will do so"; that he, the defendant,
then signed that note; that he never received any con-
sideration or any money for the note; that in that con-
versation no mention was made of any former notes;
that nothing was said by Munday to the effect that he
wanted the defendant to renew the old notes with the
La Salle Street National Bank; that Munday did not
write out the note himself; that "a young man in the
cage" wrote the note; that there was no connection in
his, the defendant's, mind between the amount of the

old notes being for $11,500, and the new note being for a like sum; that when he went into the La Salle Street Trust and Savings Bank on May 24, 1913, he went there because Munday asked him to call and see him; that when Munday said, "I want some paper to show the bank examiner" he, the defendant, answered that he did not think his note would be much account to him at that time; that he understood that the note was to remain in the bank to show the bank examiner as an obligation of his, the defendant; that he understood that Munday "wanted some accommodation paper to show the bank examiner when he came around"; that he signed the new note to accommodate Mr. Munday; that the new note had no connection with any old or overdue note; that he knew, at that time, that he had not been discharged in bankruptcy; that he gave the note as an asset of the La Salle Street Trust and Savings Bank to show to the bank examiner. The evidence of Spohr, who was at one time a bookkeeper and clerk for the La Salle Street National Bank and from October 21, 1912, to April, 1914, auditor for the La Salle Street Trust and Savings Bank, was to the effect that the note of May 24, 1913, for $11,500, was examined by one of the bank examiners of the State of Illinois—the time is not given—and considered and treated by him as an obligation of the defendant. He also testified that the $11,500 note was given to take up the two prior notes, but evidently that was only an opinion and not a statement of facts which he knew of his own knowledge, as he stated that he never saw the defendant.

The evidence shows that on June 19, 1914, William C. Niblack was appointed receiver of the La Salle Street Trust and Savings Bank "and all its effects and assets with the usual powers of receivers in such cases and that the said La Salle Street Trust and Savings Bank" was directed to transfer and assign all its property of every kind to the said receiver. On August 3,

1914, an order was entered in the receivership case in the Circuit Court authorizing William C. Niblack, the receiver, to institute and prosecute, in his own name, as such receiver, "any and all suits of law and in equity which he may deem necessary or advisable for the collection of moneys now due or which may hereafter become due to said La Salle Street Trust and Savings Bank." On December 4, 1914, the present cause of action was begun by the receiver and on June 11, 1917, the trial judge—the cause being tried without a jury—entered judgment for the receiver in the sum of $13,845.44 and costs.

It is contended by the appellant that there was no consideration for the promissory note for $11,500, dated May 24, 1913, which is declared on specially; and that there can be no recovery under the common counts. At the outset, two questions of fact arise: (1) Was the note for $11,500 given by reason of a moral obligation to pay the old indebtedness represented by the two notes, one of $10,000 and one of $1,500, which had been scheduled in the bankruptcy proceedings? (2) Was the note for $11,500 given solely as an accommodation and for the purpose of being treated and considered as an asset of the bank by the bank examiner?

(1) The evidence of the defendant as to what transpired at the time the $11,500 note was made, standing alone and believed, would be sufficient proof that it was not in any way given as the result of the existence of a prior indebtedness growing out of the two prior notes. The defendant testified that he signed the new note to accommodate Munday and that it had no connection whatever with any old or overdue notes; that it was given that it might be used as an asset of the bank to show the bank examiner. The only evidence in contradiction lies in inferences to be drawn from the history of the two prior notes. They aggregated $11,500; they had been indorsed by the defendant; they

had been delivered to the La Salle Street National Bank; they had been scheduled as a liability of the defendant in the bankruptcy proceedings and nothing had ever been paid on them. They had been carried on the books of the La Salle Street National Bank as "live notes" until October 21, 1912, and thereafter on the books of the La Salle Street Trust and Savings Bank as "live assets for a face amount" up to the time of the failure of that bank on June 12, 1914, and, therefore, to a time long subsequent to the giving of the new note of May 24, 1913. Spohr testified that the $11,500 note was a renewal, but he knew nothing of the facts occurring at the time the note was given. He had never seen the defendant and so was not present when the note was given. It is insisted by counsel for the appellee that the story of the defendant is unworthy of belief. There is no doubt but that the evidence, all taken together, gives rise to a strong suspicion that the $11,500 note was given by reason of the former outstanding indebtedness. The mere fact that the two amounts were equal, that is, the total amount of the old notes and the amount of the new note, however, is not necessarily conclusive proof that there was a relationship between them; nor is the fact, that the old indebtedness had not been paid, conclusive. It is true those facts are consistent with the claim of appellee and incline the mind strongly to suspect that the note of $11,500 was given to take the place of the old indebtedness. But, the uncontradicted testimony of the defendant, even though it may not be especially plausible, must yet be considered; for, although highly improbable, it still may be true. Skeptical though we are, after a careful analysis of all the evidence, we feel bound to conclude that it was not only insufficient, but manifestly insufficient to prove that the new note was given in any way, moral or otherwise, owing to the indebtedness evidenced by the old notes.

(2)    Was it given as an accommodation and that it
might be considered and treated by the bank examiner
as an asset of the bank? The evidence sufficiently
shows that it was; that is the admission and conten-
tion of the defendant; and the first point in the brief
for the plaintiff is founded on that assumption. It '
may be said, incidentally, that counsel for the plaintiff
argue that the defendant may be believed on that sub-
ject but is entirely unworthy of belief when he says
the note was not given for the "moral consideration."
Of course, if it was given for the "moral considera-
tion" it was not given as an accommodation and merely
to swell the seeming assets of the bank; the two pur-
poses are incompatible. We have already stated, how-
ever, our conclusion that the evidence does not prove
that the note was given by reason of the "moral con-
sideration"; and that that conclusion was reached
partly by reason of the defendant's testimony.

We shall, therefore, now, assume his testimony as
to the history of the note to be true, and proceed to
consider the question of law, whether the circumstances
testified to show an estoppel. The important facts are
that at the instigation of Munday, the vice president
of the bank, the defendant gave the note for the ac-
commodation of the bank, and that it might be shown
to the bank examiners; and that subsequently it was
examined by them and treated and considered as an
asset of the bank; and that the defendant never got
anything for it. Farley occupied no fiduciary position
in regard to the bank and cannot be said to have been
in any way interested in the continuance of the bank
as a going concern. Is he now estopped from denying
liability?

It is claimed by the defendant that the note was
given as an accommodation and without consideration;
and, therefore, may not be sued upon by the receiver;
and it is claimed by the plaintiff that even if the de-
fendant gave the note merely for the purpose of hav-

ing it considered and treated by the bank examiner as
an asset of the bank, and it was so considered, want of
consideration is no defense.  The plaintiff relies chiefly
upon the case of *Golden v. Cervenka,* 278 Ill. 409, and
certain New York and Pennsylvania cases, and the
Michigan case cited therein.   The defendant under-
takes to distinguish the *Golden* case and to rely upon
the law as stated in *Chicago Title & Trust Company
v. Brady,* 165 Mo. 197, and certain federal cases.   In
the *Golden* case the Central Trust Company was held
liable because (1) the $1,250,000—in currency and
specie—did not remain "subject to the control and
disposition" of the officers of the La Salle Street Trust
and Savings Bank after the latter "was authorized to
commence business and until it was subsequently
checked out by the authorized officers in the regular
course of business"; (2) because the Central Trust
Company, having represented that the $1,250,000
shown to the auditor was the property of the La Salle
Street Trust and Savings Bank and "having immedi-
ately taken and retained possession of it to the exclu-
sion of the Bank," it (Central Trust Company) must
make good its representation and account for the
money so wrongfully taken by it; and (3) because the
Central Trust Company assisted in the procurement
of the auditor's certificate and "is estopped as against
creditors who had a right to rely upon the auditor's
certificate, to deny that the cash exhibited was the
property of the Trust and Savings Bank," etc.   The
amount of the liability of the Central Trust Company
—and which was stated by the court to be only to cred-
itors—was for the difference between the amount of
the capital and surplus of the La Salle Street Trust
and Savings Bank and the value of the assets of the
La Salle Street National Bank on the date of the trans-
fer.   The court interpreted the evidence as showing
that the Central Trust Company, by taking back the
million and a quarter of cash which had been shown to

the examiner as the money of the La Salle Street Trust and Savings Bank, and in not leaving it with the latter until it was "checked out by the authorized officers of the bank in the regular course of business," was guilty of taking funds which did not belong to it. The facts in that case and in the instant case are not even similar. Here the defendant did not take anything from the bank, as the Central Trust Company did; nor did he assist in helping the bank to obtain something of value—such as the auditor's certificate—to which it was not legally entitled. He gave his note as an accommodation for which he received nothing, and the bank retained it. The bank lost nothing and its creditors, as far as the proof shows, suffered no detriment. The bank and its creditors had no less afterwards than before. And there is no evidence that the presence of that note had any bearing whatever on the continuance in business of the bank. Are we entitled, without evidence, to assume that it did? And if we are, even then, are we also further to assume that because the bank did continue longer in business by reason of the presence of the defendant's note, that continuance was a detriment to its creditors? The note was given on May 24, 1913, and the receiver was appointed on June 19, 1914. Does it not seem reasonable, therefore, to conclude that such conjectures as to possible detriment to the creditors are insufficient to justify an estoppel?

There is a text in the *Golden* case, *supra*, to the effect that it has been held that where notes have been given to a bank "for the purpose of making an appearance of assets, so as to deceive the examiner and enable the bank to continue business, although the circumstances may have been such that the bank itself could not have collected the securities," the receiver, representing creditors, could maintain an action, "and the makers were estopped, upon the insolvency of the bank, to allege want of consideration." The following cases are cited in support of it: *Best v. Thiel,* 79

N. Y. 15; *Sickles v. Herold,* 149 N. Y. 332; *State Bank of Pittsburg v. Kirk,* 216 Pa. 452; *People's Bank of California v. Stroud,* 223 Pa. 33; *Lyons v. Benny,* 230 Pa. 117; *Dominion Trust Co. v. Ridall,* 249 Pa. 122. The *Stroud* case need not be considered as it is not, as a decision, relevant. In four of the remaining five cases, the securities were not given by a stranger, but by trustees, stockholders or directors, or, as in one case, by a former treasurer. In the latter case (*Dominion Trust Co. v. Ridall*) the strongest in *dicta,* there was no evidence that it was agreed that the securities (mortgages) should not be enforced; so that liability was inevitable. Only in one of the cases cited—the *Lyons* case—was the security given by a stranger, and in that case it was given expressly to take the place of the note of another, which latter note had been objected to by the bank examiner. Thus it is seen that neither the actual decision in the *Golden* case, *supra,* nor the cases cited in support of the above-mentioned text, go so far as to hold that the acts of the defendant in the instant case create an estoppel. In *Chicago Title & Trust Co. v. Brady, supra,* where certain notes were given by the defendant in order to help the bank, the assets of which were decreasing, and for which notes the defendant received a written statement that they were accommodation notes, the court held that as a defense for want of consideration would have been good in a suit by the bank, it must be held to be good against the action of the receiver. *Cutler v. Fry,* 240 Fed. 238.

Of course, even if the defendant were liable by estoppel, he would only be liable secondarily to the creditors in case there was shown to be a deficit after the liability of the stockholders had been enforced. As the La Salle Street Trust and Savings Bank obtained the note for the purpose of deceiving the bank examiner, it, of course, *qua* bank, could not recover on the note; to hold otherwise would be to allow the bank to profit

by its own fraud. As the court said in *Agricultural Bank v. Robinson,* 24 Me. 274: "When the law shall conclude that an agreement between two persons to deceive and defraud a third constitutes a valuable consideration for the contract between themselves, he may; but not till then." In the instant case, there is no evidence in the record, not only that any stockholder but even that any creditor, has actually suffered by reason of the making of the note. "And the court cannot properly enter upon a wide range of conjecture and infer that some one must have suffered by it because the assets of the bank, as an insolvent corporation, were nearly four years (here about one year) afterwards placed in the hands of receivers." *Agricultural Bank v. Robinson, supra.* Further, as the capital stock and surplus of the bank aggregated a million and a quarter, what practical effect did the acceptance of the defendant's note for $11,500 have on the mind of the bank examiner, especially when, at that very time, the defendant was in bankruptcy? There is an entire want of evidence to show that the giving of the note in any way affected the determination of the bank examiner, or that it had any influence upon the continuation of the bank in business; or, if it did influence the bank examiner, and did lend to the further continuance of the bank in business, that the bank was better or worse off by reason of continuing in business from May 24, 1913 to June 19, 1914.

Certainly it was wrong and in violation of honest dealing for the defendant to agree with the vice president to give his note that it might be used to cheat the bank examiner, and as certainly there ought to be some method of punishing such an offense; but as this is a civil proceeding for the benefit of the creditors of the bank and the evidence fails to show that any creditor was personally prejudiced or injured, or suffered any detriment by reason of the defendant's misconduct, and as, therefore, one of the well-known neces-

sary elements creating an estoppel is wanting (Bigelow, Estoppel, 5th Ed. 638; *Davis v. Bowmar,* 55 Miss. 671; *Shaw v. Spencer,* 100 Mass. 382; *Payne v. Burnham,* 62 N. Y. 69), we are of the opinion that, under the law, the note of $11,500 must be considered as having been shown to be merely an accommodation and without consideration, and that, therefore, the plaintiff cannot recover. Accordingly, the judgment must be reversed with a finding of fact.

*Reversed with a finding of fact.*

Finding of fact. We find as a fact that there was no consideration for the promissory note in suit; that there was no indebtedness such as was claimed by the defendant in error and that the creditors of the bank were not injured by the giving of the note.