BY THE

## ST. LOUIS, KANSAS CITY AND SPRINGFIELD

# COURTS OF APPEALS

AT THE

## MARCH TERM, 1922.

---

## FIRST NATIONAL BANK OF MOUNTAIN GROVE, Respondent, v. J. M. HUBBARD, Appellant.

### Springfield Court of Appeals, May 8, 1922.

1. **BILLS AND NOTES: Maker of Note to National Bank to Reduce Excessive Loan to Third Person Liable on the Note.** Under Revised Statutes U. S., secs. 5200, 5239 (U. S. Comp. St., secs. 9761, 9831), as to legal amount of national bank loans and directors' liability for excessive loans, where a national bank president made a loan in excess of the legal amount, and gave his own note to the bank to reduce the apparent amount of the loan which he had made, he could not successfully contend, in suit on the note, that it was given solely to accommodate the bank, and was without consideration, since he incurred a contingent liability when he made the excessive loan.

2. **APPEAL AND ERROR: Appellant May not First Raise Objection on Appeal That All the Facts Were not in Evidence.** Where a party went to trial, and made no intimation that all the facts were not in evidence until the case reached the appellate court, he cannot complain on appeal that all the evidence was not before the court.

Appeal from the Circuit Court of Wright County.—*Hon. C. H. Skinker*, Judge.

(9)

AFFIRMED.

Lamar, Lamar, & Lamar for appellant.

A party whose benefit accommodation paper has been made acquires no rights the accommodation party, who may set up the want of consideration as a defense to an action by the accommodated party, and the fact that the paper was given to deceive the officials or bank examiner does not in any wise change the rule. 8 Corpus Juris, 259 sec. 404 and cases cited in note 43; Chicago Title and Trust Co. v. Brady, 165 Mo. 197; Central National Bank v. Walterscheid, 204 Mo. App. 179; First State Bank v. Morton, 142 S. W. 694; First National Bank v. Freeman, 98 S. E. 558; Central Bank and Trust Co. v. Ford, 152 S. W. 700; Citizens Trust Company v. McDougald, 178 S. W. 432; Woodbury v. Glick, 132 N. W. 67; Bank v. Keith, 85 Mo. App. 409; First National Bank v. Felt, 69 N. W. 1057; Wilt et al. v. Wilson, 160 S. W. 309; Peterson v. Tellinghast, 192 Fed. (U. S. C. C. A.) 287; George C. Rankin, Receiver v. City National Bank, 204 U. S. 541; 28 Supreme Court Rep. 346; Farmers Security Bank v. Nelson, 179 N. W. 917.

N. J. Craig and A. M. Curtis for respondent.

(1) Any benefit, profit or advanage to the promisor or any loss, detriment or inconvenience to the promisee is a sufficient consideration to support a note. 8 Corpus Juris, 212, sec. 347; Nelson v. Diffenderfer, 178 Mo. App. 48; Williams v. Jensen, 75 Mo. 681; German v. Gilbert, 83 Mo. App. 441. (2) The enchancement of the value of a bank stockholder's stock is sufficient consideration to support a note given by the stockholder to the bank. First National Bank v. Henry, 202 S. W. 281; Union Bank of Brooklyn v. Sullivan, 214 N. Y. 332, 108 N. E. 558. (3) A release from a liability already incurred is a sufficient consideration for a note. 8 Corpus Juris, 231, sec. 367. (4) Any director of a

National bank that grants a loan in excess of ten per cent of the capital stock of such bank is liable in his personal and individual capacity for all the damage sustained in consequence of such excessive loan. U. S. Revised Statutes sec. 5200 as Amended Act of June 22, 1906, ch. 3516; City National Bank v. Crow et al., 27 Okla. 107; Ann. Cases 1912 B. 647 and note. (5) The maker of a note will not be permitted to prove that though he executed the note it was at the time agreed that he need not pay it. Bass v. Sanborn, 119 Mo. App. 103. (6) An agreement with a bank's officers fraudulent as to its stockholders under which persons sign a note to it for a loan in excess of the lawful limit, that their names would be used only to exhibit to the bank examiner, cannot be asserted against the bank. Bank of Dexter v. Simmons, 204 S W. 837.

BRADLEY, J.—This is a suit on a promissory note. The cause was tried below before the court without a jury, and judgment went for plaintiff for the face of the note with interest, and defendant appealed.

The note sued on is for $1500 and is dated September 10, 1919, and due on demand. The defense is failure of consideration  Defendant pleads in his answer that the note is a renewal of other notes of like amount, and that all of said notes were without consideration, and were executed solely for the accommodation of plaintiff.  Defendant's answer after admitting that he signed the note is as follows: "For further answer to plaintiff's petition defendant says that while it is true that he executed said note and delivered it to the plaintiff, yet defendant says that said note was and is wholly without consideration; that defendant received nothing and that plaintiff paid to this defendant nothing therefor, and that said note is not and never was binding upon defendant in the hands of this plaintiff.  Defendant further says that said note is a renewal of other and former notes for like amounts as the note sued on; that all of said notes were without consideration and were executed by this

defendant solely for the accommodation of the plaintiff; that some eight or ten years ago, the exact date of which defendant cannot now state, the said plaintiff bank was forced to and did take over for certain indebtedness due and owing to said bank by one J. J. Murr certain lands; that the amount of the indebtedness of said Murr for which said lands were taken over was in the neighborhood of $7,500 or $8,000; that said Murr became and was insolvent, and that said real estate was taken over by said bank on said indebtedness, and was the only property out of which said debt could be realized, and that said real estate was carried on the books of said bank as an asset thereof at the amount for which the same had been taken; that on said date or shortly thereafter one E. J. Green was the cashier of said bank, and prepared a note payable to said bank in the sum of $1,500, and informed this defendant that it was desired and was better for said bank if this defendant would sign said note for the accommodation of said bank, so that the amount thereof could be credited to the amount for which said real estate was carried on said books, and informed this defendant that later on and in due time, when the condition of the earnings of the bank were so that the same could be done, that said amount would be charged off as loss and said note surrendered to defendant herein; that relying upon the statements and promises of said cashier this defendant did execute said note, but that defendant received nothing whatever therefor, but the amount of said note was credited on the amount charged against said real estate on the books of said bank and charged to bills receivable on said bank so that the books of said bank might not show such a large amount carried against said real estate as assets; that said note was renewed from time to time at the request of the officers of said bank and for the express accommodation of said bank; that at no time was defendant called on to nor did defendant at any time pay any interest or discount on said note nor did this defendant ever furnish or pay the stamps placed on said note, but as the same matured

from time to time it was renewed solely for the accommodation of said bank at its request and for the reason above set forth, and that the note sued on is in renewal and continuation of the note signed by this defendant, under the circumstances and for the purpose above set forth, and that this defendant when said original note was executed received absolutely no consideration whatever therefor, and that the plaintiff paid no consideration for said note, and that said note is invalid and without consideration. Wherefore, defendant prays that he be discharged with his costs herein laid out and expended.''

The evidence on the part of plaintiff tended to show that Murr in 1908 owed plaintiff bank $2500, which was ten per cent of the capital stock and the limit that could under the law be loaned to Murr. In this situation Murr applied to defendant, who was at the time president of plaintiff bank, for an additional loan of $1500. Defendant was an active officer in the bank at this time, drawing a salary of $100 per month, and had charge of the loans and notes. When Murr made application for the $1500 loan the cashier, who was also a director, and Hull another director, were opposed to making the loan because Murr had already the limit that could lawfully be loaned to him. Over their objections defendant made the loan. Two days after his loan the bank examiner came, and on discovering this excess loan to Murr ordered that Murr's indebtedness to the bank be immediately reduced so that the loans to him would be within the law. Defendant thereupon induced Murr's father to give his note to the bank for $1500 to take up Murr's $1500 note. Shortly thereafter it was discovered that Murr was in bad shape financially, and could neither pay the $2500 nor the $1500. When this situation appeared defendant gave his own note for $1500 to take up the note given by Murr's father. Defendant's note was renewed from time to time, but never for more than $1500 though no interest was paid, and the bank furnished the revenue stamps, and until this suit no attempt was made to collect. In August,

1918, one Dennis purchased the stock of Green who was cashier when defendant gave the first note in the Murr transaction and succeeded Green as cashier. Later Dennis purchased defendant's stock, and defendant went out, and Dennis became president. About the same time that Murr got the $1500 loan through defendant, he, Murr, gave a trust deed on his lands and a chattel mortgage on his personal property to the Bank of Mountain Grove for an indebtedness he owed that bank. When it was discovered by plaintiff that the Bank of Mountain Grove had a lien upon all of Murr's property defendant then gave his note as we understand the record. Plaintiff took up Murr's indebtedness to the Bank of Mountain Grove, and got all of Murr's property, but according to the record lacked about $2500 getting out even with Murr. In other words if plaintiff collects the note sued on it will still be loser about $1000 in the Murr matter. It further appears that the note sued on and its predecessors were at all times carried on the books of the bank as an asset, and that December 31, 1919, in the report of the board of directors to the Comptroller of the Currency, which report was signed by defendant, under "Liability of Officers and Directors" this $1500 was listed as a liability of defendant.

Defendant's evidence tends somewhat to support his answer, and to the effect that the note was given in the first instance to deceive the national bank examiner, and that it was understood by the cashier and all the directors that he was not to pay this note; that he received no part of the proceeds, and signed only to accommodate plaintiff.

Defendant makes but one assignment. He contends that the evidence was wholly insufficient to authorize a judgment against him. This contention is made on the theory that he gave the note to *accommodate* plaintiff bank, and received no part of the proceeds, and in such circumstance the *accommodated party* cannot recover against *the accommodator*. To support this contention defendant relies on Chicago Title & Trust Co. v.

Brady, 165 Mo. 197, 65 S. W. 303; Central National Bank v. Walterscheid, 204 Mo. App. 179, 222 S. W. 912, and other cases of like import from other jurisdictions. In all of these cases the accommodating party was under no obligation independent of the one in question, and recovery was denied because there was no consideration. The principle relied on by defendant is stated in Chicago Title & Trust Co. v. Brady, supra, l. c. 209: "As the defense would have been good, if no receiver had been appointed and the suit on the notes had been brought by the bank, so it must be held to be good against the action of the receiver. The fact that the effect of giving these notes was to swell the apparent assets of the bank and that such was the purpose of giving them, and that thereby the bank examiner, creditors and stockholders of the bank may have been deceived as to its condition, in no way changes the relation or rights of the parties. Accommodation paper is simply a loan of credit by the person making it to the person to whom it is given, and its necessary effect is to swell the apparent assets of the latter, to the eyes of anyone to whom it is exhibited, but unless it is negotiated such person can acquire no right of action thereon by reason of the fact, nor does it supply consideration for the paper."

Defendant here, however, is in no such position as were the defendants in the cases he relies on. In those cases there was no liability, contingent or otherwise, when the notes were given. In the case at bar defendant incurred a contingent liability of $1500 when he made the loan of $1500 to Murr, by reason of the federal statute regulating the liability of directors of national banks. At the time of the $1500 loan to Murr in 1908 the capital stock of plaintiff bank was $25,000, and by section 5200, U. S. R. S. (Sec. 9761, U. S. Comp. Stat. 1916), a loan of over ten per centum of the capital stock and surplus to any one person, company or corporation is prohibited. At that time Murr had a $2500 loan, and the $1500 loan was excess, and in violation of the statute. By section 5239, U. S. R. S. (Sec. 9831, U. S. Comp. Stat. 1916), it

is provided as follows: ''If the directors of any national banking association shall knowingly violate, or knowingly permit any of the officers, agents, or servants of the association to violate any of the provisions of this Title, all the rights, privileges, and franchises of the association shall be thereby forfeited. Such violation shall, however, be determined and adjudged by a proper circuit, district or territorial court of the United States, in a suit brought for that purpose by the Comptroller of the Currency, in his own name, before the association shall be declared dissolved. And in case of such violation, every director who participated in or assented to the same shall be held liable in his personal and individual capacity for all damages which the association, its shareholders, or any other person, shall have sustained in consequence of such violation.''

In National Bank of Commerce v. Wade, 84 Fed. 10, it was held that a suit by the comptroller of the currency for dissolution and adjudication of the loss is not a condition precedent to the enforcement of the liability of a director under section 9831, supra. Under section 9831 defendant, when he made the $1500 loan to Murr, incurred a contingent liability of $1500. The contingency was determinable on working out whole or in the hole on the Murr indebtedness. According to this record that contingency has been determined, and plaintiff will be loser in the sum of $1000 on the Murr deal after collecting the judgment against defendant. City National Bank v. Crow et al., 27 Okla. 107, 111 Pac. 210; Ann. Cas. 1912 B. 647, was a suit against the president and cashier of a national bank for damages for making a loan in excess of the limit as fixed by section 9761, supra. In that case the same sections relative to national banks were involved as are involved here. There Stephens v. Overstalz, 43 Fed. 465, is cited and quoted as follows: ''The statute says, in effect, that they shall be liable for whatever damages result to any one from their violation of duty. . . . Whoever is injured may sue, and the extent of the recovery depends upon the damage which

the party suing has sustained. It does not fix any definite sum to be paid by the party for his wrongdoing. It simply says he must make good the damage he has inflicted upon others. . . . The officers of a bank are forbidden to do a certain thing because it may tend to the ruin of the bank. The statute says you shall not do that, and if you do it, you shall be liable to all persons injured by your wrongful act. *You shall be liable to the bank* (italics ours), you shall be liable to the stockholders, and you may be liable to the general creditors of the bank, or the depositors of the bank. The extent of that liability is not affected by the circumstances which mislead you, or by your criminal intention, but depends on the fact that the act was done knowingly, and was in violation of the law. The extent of the liability incurred is the amount of damages you have inflicted upon others.''

In that case it is pointed out that in such cases as the one at bar the questions or issues are: (1) Was the loan in excess of the amount allowed the borrower under the law? (2) Was the loan knowingly made or assented to by defendant? (3) What portion of the money so loaned was lost?

Defendant's counsel in oral argument and in a supplemental brief intimates that the full facts are not before us; that the bank in fact took over Murr's property and released the Murr obligations. Defendant gave some evidence to that effect as appears in the record, but the court found against him on that issue. If defendant did not get all the evidence available he cannot complain, because he went to trial, and made no such intimation until the cause reached this court. The judgment should be affirmed and it is so ordered. *Cox, P. J.,* and *Farrington, J.,* concur.