STATEMENT OF FACTS.
This is an action upon a promissory note for $1,500 given to the First National Bank of Weiser, Idaho, by G. A. Peters, appellee, and after five or six renewals, and after maturity, taken over by the appellant bank, which purchased the assets of the failed First National Bank. The execution and delivery of the note was admitted, but it was alleged that there was no consideration therefor, that it was given purely for the accommodation of the First National Bank and under express agreement with the officers thereof that it was not to constitute an obligation or to be paid.
The note sued on was dated November 21, 1921, and was executed by the appellee, Peters, to the First National Bank of Weiser, the appellant, Weiser National Bank, acquiring the note, which was the fifth or sixth renewal of the original, by assignment from the First National Bank, taking over its assets when it ceased business in 1923.
In 1917 Peters was a director of the said First National Bank, and, during that year, it was brought to his attention that the bank held certain "slow assets" which had been disapproved by the bank examiner, and it had been ordered by the examiner to replace the slow assets with live ones. Appellee was requested by the bank officials to execute a note for $1,500 to the bank for its accommodation, to be held by the bank merely until it could realize on the slow assets from a sale thereof. Peters stated that he complied with the request and executed a $1,500 note for the purpose, it being held by the bank for its accommodation, and being distinctly understood that the bank would protect him against the payment thereof, and that the note would be canceled as soon as the bank could realize upon the slow assets by a sale thereof. The note was renewed five or six times, *Page 986 
each renewal being executed under the same or like conditions as to the payment, land no interest was charged thereon. Other directors of the bank executed similar notes under like conditions.
Appellee denied liability on the ground that his note was made for accommodation only, merely representing a temporary loan or credit, and was not intended to be paid by him. The appellant bank, which took over the assets of the failed bank, received the note sued on after maturity and in the sale and assignment of the assets of the First National Bank.
The bank contended that appellee, who was a stockholder in the First National Bank, owning $2,700 worth of stock, was informed by the other directors and other officers of the bank that the slow assets would not be approved by the bank examiner, and must be replaced with other assets, and that the directors were going to take out the slow assets, which they did, and organize a corporation for their sale, executing their notes to the bank therefor in different amounts in proportion to the stock, to be held by the bank until said assets were disposed of, it being believed that enough should be realized to pay the notes given the bank to be held as assets in the place thereof. It was shown that the slow assets were taken over by this corporation and that its stock was worth about 65 cents on the dollar at the time this suit was brought, and also that the notes of all the other directors of the bank put in at the time of taking out such assets had been paid.
Appellee admitted that he executed the note, and stated that the bank got into trouble through some loans they made prior to the time of his election as a director. * * * "Then one winter the bank examiner informed them they would have to take out this slow paper. * * * I was not told anything about the meeting with the bank examiner on my arrival there, but I was told about it later on in the fall, when they asked me to help them out as an accommodation to the bank. They had taken out this slow paper, but they did not have enough notes to cover the amount of paper they had taken out. The *Page 987 
bank examiner insisted on them putting up more notes. They asked me if I would not put up my note, and they would in a short time release this note, and I would not be under any obligations to the bank, and they would not charge any interest. They felt sure this land could be sold in a short time. Conditions were very good at that time, and it was just a matter of months and they would release the note. No mention was made of any company being formed. No mention was made of any stock. * * * I finally did give them my note for $1,500. * * * they wanted was something they could have lying in the bank, to show the bank examiner when he came around. So I give them the note for $1,500."
The court found in favor of the defendant, and from the judgment this appeal is prosecuted.
(after stating the facts). The note sued on was made and payable in the State of Idaho, where all the transactions relative thereto occurred, and must be considered a contract governed by the laws of that State. Contracts or notes of like kind, given purely for accommodation of the payee and without consideration, are not enforceable by the payee or his assignee after maturity, under the laws of that State. Payette Nat. Bank v. Ingard, 34 Idaho 295, 200 P. 344; First Nat. Bank of Idaho v. Rents, 42 Idaho 720, 248 P. 90. See also First Nat. Bank v. Freeman, 83 W. Va. 477, 98 S.E. 558; Chicago Title Trust Co. v. Brady, 165 Mo. 197,65 S.W. 303; Farmers' Bank of Westboro v. Harris, Mo. App.250 S.W. 947; Grisim v. Live Stock State Bank,167 Minn. 93, 208 N.W. 356.
The renewal notes were shown to have been executed in accordance with the express original agreement, as understood by the parties at the time, and cannot therefore be regarded as a waiver of the defense of failure of consideration, as would otherwise usually be the case. *Page 988 
Stewart v. Simon, 111 Ark. 358, 163 S.W. 1135, Ann. Cas. 1916A, 825; Haglin v. Friedman, 118 Ark. 465,177 S.W. 429.
The testimony is sufficient, in the opinion of the majority, to support the judgment, which is accordingly affirmed.